[Civil No. 2667.   Filed June 11, 1928.]

[268 Pac. 181.]

ALEXANDER ROSSI, Appellant, v. A. T. HAM-
MONS, as Superintendent of Banks, in Charge
of the Liquidation of the ARIZONA BUILDING
AND LOAN ASSOCIATION, a Corporation,
Appellee.

Mr. George O. Hilzinger, for Appellant.

Mr. Elwood B. Frawley, for Appellee.

McALISTER, J.—The Arizona Building & Loan Association having become insolvent, A. T. Hammons, as superintendent of banks, took possession of its assets in 1923 and later filed suit against Alexander Rossi for the recovery of $5,000 which, it

is alleged, the association wrongfully paid him for twenty-five shares of its permanent guarantee stock. From this judgment and the order denying his motion for a new trial the defendant appeals.

This association, it appears from the bill of exceptions, was organized in 1902 for the purpose of transacting business of the general nature of that usually engaged in by such associations, its capitalization being $1,000,000 divided into 5,000 shares of the par value of $200 each. Its articles of incorporation were amended in 1908 by the insertion of clauses permitting it to perform certain acts which it is contended had the effect of constituting it also a savings bank and by increasing its capital stock to $2,000,000 and authorizing its board of directors to provide from this a permanent guarantee stock.

Pursuant to this authorization provision for one thousand shares of such stock was made in 1909 and the sale of 250 shares thereof to remain as the fixed and permanent capital of the association was ordered in 1917. Twenty-five of these were purchased by appellant for $5,000 in 1918 and held by him until November 16, 1922, when they were resold to the association for the amount he had given for them and the association's warrant in payment therefor was delivered to him and paid, though such payment was neither authorized nor ratified by the board of directors and the stock was sold in violation of the by-laws which provided that it could be withdrawn or disposed of after five years but only after six months' notice to the board of directors had been given. The signature of the president of the association did not appear upon the warrant, though appellant offered evidence tending to prove that this requirement had been disregarded habitually by the treasurer.

The association was insolvent January 1, 1920. Its deficit at that time was $14,495.86 and by August

1, 1922, had increased to $31,512.48, both of these amounts being reflected in the books of the association. At all times from 1905 until November 16, 1922, appellant was a member of the board of directors, though he gave testimony tending to prove that he had no actual knowledge of the financial condition of the association and there was nothing in the evidence showing any actual intention on his part to defraud it, its stockholders or creditors, except in so far as the facts stated render his action fraudulent in law.

It is further disclosed by the bill of exceptions that on April 1, 1924, L. H. Hofmeister, who had been theretofore appointed receiver of the said association, brought an action against this appellant on identically the same cause of action set up in this case and in his complaint alleged, as appellee has here, that "this action is brought for the benefit of all creditors, stockholders and others interested in said association"; that appellant demurred to that complaint upon the ground that Hofmeister, receiver, had not the legal capacity to sue and as grounds for demurrer his counsel submitted to the court the proposition that the plaintiff in this action was the proper person to bring the suit and upon this ground the demurrer was sustained by the court.

Upon the answers of the jury to certain interrogatories and the other facts as found by the court judgment was entered for the plaintiff in the sum of $5,000 with interest thereon at six per cent per annum from the day on which the stock was sold to the association, and it is from this judgment that defendant appeals.

The order of the court overruling appellant's demurrer to the complaint which was interposed upon two grounds, first, that appellee did not have the legal capacity to sue, and, second, that the complaint did not state facts sufficient to constitute a cause

of action, is the first error assigned. Under it and the second assignment, which bases error upon the order rendering judgment for the plaintiff, are discussed the propositions upon which appellant relies for a reversal. His main contention is that the superintendent of banks is not the proper party plaintiff because, first, building and loan associations are not banks within the meaning of the banking act (chapter 31, Session Laws of Arizona 1922), and, second, that act does not confer upon him the right to take charge of insolvent and unsafe building and loan associations and liquidate their affairs as it does banking institutions.

Appellee takes the position that, due to certain clauses in its articles of incorporation, the Arizona Building & Loan Association was permitted to carry on the business of a savings bank and for this reason should have been held to be one, but it is unnecessary to determine whether this is true or not for the reason that if it had this right under its charter this fact alone would not be sufficient to make it a savings bank when the primary purpose of its organization was to carry on the business of a building and loan association. Before such a result could follow it would be necessary to show that it actually transacted business of this character or held itself out as doing so. And while it is true that a building and loan association, which actually holds ''itself out to the public as receiving money on deposit, whether evidenced by certificate, promissory note, or otherwise'' (section 54, Banking Code), even in the absence of charter permission to transact such business, may be considered as carrying it on anyway and, therefore, as subject to the liquidation as well as other provisions of the Banking Act, yet in view of the fact that the record in this case is free from even suggesting that this association either did a business of this kind or held itself out as doing it,

this section of the Banking Act is wholly without application and furnishes no basis for holding the association to be a savings bank.

Appellee, however, takes the further position that even though this association cannot be held to be a bank it was the intention of the legislature in the enactment of the Banking Code to place all building and loan associations under the supervision of the superintendent of banks as completely as it did banking institutions. There is, however, no reference to them in the liquidation provisions of the act, section 43, but in view of certain other provisions which it is contended strongly indicate a legislative intent to give the superintendent of banks authority over them for all purposes, it is argued that this omission was merely inadvertent and not intentional. For instance, it is pointed out that section 9 provides that all building and loan associations are subject to examination by the superintendent of banks; that section 10 directs him to visit and examine every such association at least twice each year; that section 14 requires him to issue each association a license to do business and makes engaging therein without such license a crime, and that section 53 compels them to file with him not less than three verified reports each year showing their actual financial condition. The fact, however, that in each of these connections building and loan associations are mentioned along with banks discloses rather, according to appellant, that the failure to enumerate them in section 43, which is the source of the power of the superintendent of banks to take over insolvent banks and liquidate their affairs and would be of building and loan associations if it existed, was not inadvertent, but intentional. And when it is remembered that the old law on the subject, title 4, Revised Statutes of 1913, entitled "Banks," gave the bank controller this power over

loan associations, the failure of the new law to refer to it at all, notwithstanding many of the provisions of the old one were carried forward into it, adds strength to this view. There is, it is true, no apparent reason why the superintendent of banks should not liquidate building and loan associations as well as license and examine them and receive the reports of their financial condition, the same as he does banks, yet the legislature seems to have proceeded upon a different theory, its view evidently being that the courts, through their ordinary equity powers, could handle such situations through the appointment of receivers.

However, even though it be a fact that the superintendent of banks did not have capacity to sue he insists that his being made the plaintiff in the action was error the appellant invited and he should not now be permitted to take advantage of it. The rule supported by all the authorities is that one who invites error is thereafter estopped from complaining of it. *Carrick et al.* v. *Garth et al.,* 166 Ky. 617, 179 S. W. 609; *Rogers et al.* v. *Penobscot Mining Co. et al.,* 28 S. D. 72, Ann. Cas. 1914A 1184, 132 N. W. 792; *New York Life Ins. Co.* v. *Davis et al.,* 94 Va. 427, 26 S. E. 941; *Hoffman* v. *Silverthorn et al.,* 137 Mich. 60, 100 N. W. 183. It is, therefore, only a question whether the facts in this case call for its application and an investigation of them convinces us that it does. The record discloses that a complaint was filed against appellant prior to this action by one Hofmeister, receiver, upon the same cause of action and that in support of his demurrer thereto appellant submitted to the court through his counsel the proposition that the superintendent of banks was the proper person to bring the suit, and the court being convinced of the correctness of this position sustained the demurrer in that case, whereupon a complaint in the name of that official was filed. But,

notwithstanding his defeat of that complaint, appellant appeared in this action and asked the trial court to hold that his own nominee, the superintendent of banks, could not bring the suit. Clearly he was not then in a position to make such a request. Having induced the court that the superintendent of banks, and not the receiver, was the proper party plaintiff, or having been instrumental in doing so, it would appear too plain for argument that he should not be permitted to change front afterwards and say that he was not.

If the person he suggested were under the law disqualified from acting as receiver it might possibly be necessary to consider his contention more seriously, but such is not the case, for there is nothing in the law preventing him from serving as the receiver of institutions other than banks if the court desires to appoint him; the mere fact that he is superintendent of banks does not stand in the way. In fact he is a receiver and nothing more when acting as a liquidating agent of a bank, for section 46 of the Banking Code provides that—

"The relations between the superior court and the superintendent of banks shall be the same as the relations of the superior court and a receiver under the laws now existing, and the superior court shall have the same authority and jurisdiction over the superintendent of banks in such matters of liquidation as it would over receivers appointed by the court, unless in this act otherwise provided."

In addition the plaintiff in this action, whether it be the superintendent of banks or a receiver appointed by the court, is only nominal, the real parties in interest being the "creditors, stockholders and others interested in said association" and both complaints alleging that the action was brought for their benefit. So far, therefore, as appellant is concerned the superintendent of banks was the proper

person to bring the suit and no one else has objected, and his being made the plaintiff in the second complaint was in effect carrying out the order of the court sustaining the demurrer to the first one upon the ground urged by appellant that he was the proper person to do so.

It might be well to say that appellant is not represented in this action by the counsel who appeared for him in the first one. However, he is bound by the position taken at that time and the fact that his present counsel may not agree with the views then urged in his behalf cannot affect the situation.

The judgment is for interest from November 16, 1922, the date the $5,000 was paid to appellant by the association, and appellant contends that it should run from the commencement of the suit, for the reason that a demand was necessary and none was made prior to the filing of the complaint on October 16, 1924. This contention is based upon the ground that appellant acted in good faith and was guilty of no actual fraud, the money, it is claimed, having been paid and retained merely without legal right. The association, however, was insolvent in November, 1922, when appellant resold it his stock, and had been for several years. He was also at that time a member of its board of directors and had been since 1905. The voucher he received in payment of the stock was not signed by the president of the association notwithstanding the fact that under the by-laws of the association it was not valid without his name; neither did it show that the board of directors had by resolution ordered such action. The stock was guarantee stock and the by-law of the association in force at that time, July 1, 1918, dealing with that kind of stock, after limiting the number of shares thereof to 1,000 and stating how it should be sold and paid for and the purpose for which it could be used, said:

"Provided, however, that should the owners of said permanent guarantee stock desire to withdraw or dispose of the same they may after five (5) years by giving six (6) months notice to the board of directors of the association."

The jury found that appellant had no actual knowledge of the association's financial condition but this was immaterial, since, being a director, he was charged with such knowledge. 14a C. J. 100; *Ronald* v. *Schoenfeld,* 94 Wash. 238, 162 Pac. 43; *Pacific Vinegar & Pickle Works* v. *Smith,* 152 Cal. 507, 93 Pac. 85. "The duty of a director to the corporation," says the court in *Folsom* v. *Smith,* 113 Me. 83, 92 Atl. 1003, "requires him to know its financial standing, and he is presumed to know it."

Nothing more than the foregoing facts was necessary to show fraud in law, whether actual fraud was intended or not. The money of the association having been wrongfully accepted and retained by appellant until the present time, the claim for its reimbursement should bear interest at the legal rate from the date of its receipt by him, because "when allowed as damages, interest runs from the date when the right to recover a sum certain is vested in the plaintiff." 8 R. C. L. 538, par. 90; *City of Chicago* v. *Northwestern Mutual Life Ins. Co.,* 218 Ill. 40, 1 L. R. A. (N. S.) 770, 75 N. E. 803; 33 C. J. 230. Though the equivalent of interest, it is in the nature of damages. As said by the court in *Gimbel Bros., Inc.,* v. *Barrett,* (D. C.) 218 Fed. 880:

"The question arising here was argued as one of whether interest should be calculated from the time of payment or from the date of the demand for recoupment. The question is really one of the assessment of damages, and becomes a question of a charge of interest only by way of analogy, because of the fact that whenever the damage results from the withholding of money it cannot exceed the value of the use of that money, and by reason of this the

limit of the measure may be said to be interest. In all damage cases the damages are to be assessed with reference to the time when the damage was suffered, and when the adjustment takes place at a later date the assessment is to be made as of the earlier date, with the lapse of time between that and the later date in mind."

The judgment is affirmed.

ROSS, C. J., and LOCKWOOD, J., concur.