406 P.2d 430

FIRST NATIONAL BANK OF ARIZONA, a corporation, and First Bank Building Corporation, Appellants and Cross-Appellees,

v.

OTIS ELEVATOR CO., Inc., Cross-Appellant,

v.

Una MAURER, Appellee.*

Nos. 1 CA–CIV 29, 1 CA–CIV 30.

Court of Appeals of Arizona.

Oct. 11, 1965.

---

* This appeal was filed with the Arizona Supreme Court and assigned that Court's Numbers 7606 and 7618. The matter was referred to this Court pursuant to Section 12–120.23 A.R.S.

82

Moore, Romley, Kaplan, Robbins & Green, Phoenix, by Philip A. Robbins, Phoenix, for appellants and cross-appellees First Nat. Bank of Arizona and First Bank Bldg. Corp.

Jennings, Strouss, Salmon & Trask, by Thomas J. Trimble, Phoenix, for appellant Otis Elevator Co., Inc.

Leonard S. Sharman, Phoenix, for appellee Una Maurer.

DONOFRIO, Judge.

This is an appeal of the defendants the First National Bank and First Building Corporation, hereinafter jointly referred to as the Bank, from a judgment for damages for personal injuries awarded against them in favor of Una Maurer, hereinafter called plaintiff. Consolidated with this is the appeal of Otis Elevator Company, hereinafter called Otis, from a judgment rendered against it in favor of the Bank for the amount of plaintiff's judgment against the Bank.

Plaintiff originally brought her action against the Bank and Otis, and the Bank cross-claimed against Otis. After the trial commenced, plaintiff moved to dismiss the action as against Otis, and the Court granted the motion to dismiss with prejudice as to the plaintiff after counsel for the Bank and counsel for Otis stipulated in chambers that this dismissal would have no effect on the cross-claim of the Bank against Otis.

We will first consider the appeal of the Bank from the judgment in favor of the plaintiff, and second consider the appeal of Otis from the judgment for the Bank on its cross-claim.

Plaintiff was a woman 72 years of age on January 7, 1959, the date of the incident from which this cause arose. Plaintiff went to the Bank Building on that date and made an insurance premium payment at an office on one of the upper floors. She transacted her business and rang for an automatic elevator to go downstairs. After a short wait, the elevator stopped, the doors opened, and two men stepped off. Plaintiff alleged that she started to walk into the elevator, and was struck by the door, which knocked her to the floor causing the injuries upon which her cause of action is based. There were no witnesses to the incident.

■ The first question raised by the Bank is whether the court erred in permitting the case to go to the jury under the doctrine of res ipsa loquitur. The conditions determining the applicability of res ipsa loquitur have been clearly set down in Capps v. American Airlines, Inc., 81 Ariz. 232, 234, 303 P.2d 717, 718 (1956) as follows:

(1) the accident must be of a kind which ordinarily does not occur in the absence of some one's negligence;

(2) it must be caused by an agency or instrumentality within the exclusive control of defendant;

(3) it must not have been due to any voluntary action on the part of the plaintiff;

(4) plaintiff must not be in a position to show the particular circumstances which caused the offending agency or instrumentality to operate to his injury.

We shall apply these four tests as to the applicability of res ipsa loquitur to the facts of this case:

(1) Was the accident of a kind which ordinarily would not have occurred in the absence of someone's negligence?

We have only the testimony of the plaintiff as to how the accident happened. She testified in part as follows as to the circumstances of the accident:

"Q. Well, no, let's go back—my question is this—you don't actually remember the door striking you, do you; isn't that correct?

A. Sure I remember. It hit me on the side and knocked me to the left side. But it was all so quick I couldn't explain just how it was because I had to wait for these men to come off and then I started on."

■ After examining the entire record, we hold that there was sufficient evidence for the jury to have found that plaintiff attempted to enter the elevator while the elevator doors were open, that she was struck on the right side by the elevator door with sufficient force to cause pain and soreness in her right limbs, and to cause her to fall to the floor on her left side, sustaining

bruises on the left side of her body and a bump on the left side of her head.

■ The Bank argues that the doctrine of res ipsa loquitur is not applicable in the instant case because it appears from the evidence that the particular accident could have resulted from one of several causes, for one or more of which defendant would not be responsible. With this we cannot agree. We believe that the facts are sufficient from which a jury might well believe plaintiff was hit by the elevator door, and that elevator doors do not hit people in the absence of someone's negligence.

Plaintiff testified that she remembered the door hitting her, and further she had pain and soreness in her right limbs, which fact would be consistent with her being hit by the door and inconsistent with the theory suggested by the Bank that she fell. A fall sufficiently severe to leave pronounced bruises and bumps on the left side would not also produce secondary injuries to the right side.

The Bank argues that even assuming that the elevator door came in contact with the plaintiff, no inference of negligence on the part of the Bank can reasonably be drawn from plaintiff's evidence. The strongest inference that can be drawn in plaintiff's favor they say, is that the elevator did not function with absolute perfection, and the Bank cites Nieman v. Jacobs, 87 Ariz. 44, 347 P.2d 702 (1959) in support of that position. To us the Nieman case is not applicable on its facts. There the plaintiff was injured leaving a stalled elevator after it had stopped. In Rodin v. American Can Co., 133 Cal.App.2d 524, 284 P.2d 530 (1955), the plaintiff was injured in a falling elevator. The court held:

"[That] res ipsa loquitur does apply. * * * The failure of the elevator to stop threw the burden on the respective defendants to explain the failure and to show it was not due to its or their negligence."

In the case at bar plaintiff was injured when she was struck by the elevator door. From the record on appeal this Court is of the opinion that there were sufficient facts before the jury for the jury to have determined that these particular elevator doors would not have malfunctioned and struck the plaintiff in the absence of negligence. The answer as to whether or not the particular type of accident was of a kind which ordinarily would not have occurred in the absence of someone's negligence, in borderline cases, is properly left to the jury. Judge Magruder in Marshall v. Nugent, 1 Cir., 222 F.2d 604, 611, 58 A.L.R.2d 251, explained the reason why such questions are properly questions for a jury:

"When an issue of proximate cause arises in a borderline case, as not infrequently happens, we leave it to the jury with appropriate instructions. We do this because it is deemed wise to obtain the judgment of the jury, reflecting as it does the earthy viewpoint of the common man—the prevalent sense of the community—as to whether the causal relation between the negligent act and the plaintiff's harm which in fact was a consequence of the tortious act is sufficiently close to make it just and expedient to hold the defendant answerable in damages. That is what the courts have in mind when they say the question of proximate causation is one of fact for the jury. (citing cases) It is similar to the issue of negligence, which is left to the jury as an issue of fact. Even where on the evidence the facts are undisputed, if fairminded men might honestly and reasonably draw contrary inferences as to whether the facts do or do not establish negligence, the court leaves such issue to the determination of the jury, who are required to decide, as a matter of common-sense judgment, whether the defendant's course of conduct subjected others to a reasonable or unreasonable risk, i. e., whether under all the circumstances the defendant ought to be recognized as privileged to do the act in question or to pursue his course of conduct with immunity

from liability for harm to others which might result."

This brings us to the second requirement: (2) Was the accident caused by an agency or instrumentality within the exclusive control of defendants?

█ The Bank in its answer admitted that it owned and operated the passenger elevators in question and that they were used for the purpose of transporting tenants and members of the public as passengers to and from the different floors of the Bank Building. It introduced evidence that it had entered into contractual agreements with Otis Elevator Company for the construction and maintenance of the elevators, and that the electronic mechanism controlling the operating of the doors was only accessible by key to Otis and its employees. However, "control", within the rule that res ipsa loquitur applies only where the agency or instrumentality is within the exclusive control of the defendant, refers to authority to authorize the use of the agency or instrumentality. Rodin v. American Can Company, 133 Cal.App.2d 524, 284 P.2d 530 (1955).

█ Regarding the construction and maintenance contracts with Otis, and the Bank's argument that the elevator was as a result not in the exclusive control of the Bank, California has held as follows, and we agree:

"The law does not prohibit the application of the doctrine against two or more defendants where there is joint control". Biondini v. Amship Corp., 81 Cal.App.2d 751, 767, 768, 185 P.2d 94, 104 (1947).

█ There is sufficient evidence for the jury to have determined that the facts met the second requirement for the application of res ipsa loquitur, that the accident was caused by an instrumentality within the exclusive control of the defendant Bank.

The third requirement is: (3) It must not have been due to any voluntary action on the part of the plaintiff.

█ This test includes the Bank's argument that the issue of contributory negligence should have been submitted to the jury. A careful examination of the transcript does not reveal evidence which would have supported an instruction on contributory negligence. Plaintiff's testimony as to how the accident occurred as previously set forth in detail was clear and direct. Counsel for the Bank attempted to introduce evidence of some voluntary action on the part of the plaintiff which would amount to contributory negligence, through leading questions asked plaintiff on cross examination. However, plaintiff's answers to those questions were not inconsistent with her testimony on direct examination. Her testimony was that she was attempting to enter the elevator and was struck by the elevator door. The only voluntary action on the part of the plaintiff was her attempt to enter into the elevator, which was not the type of voluntary action contemplated by the prohibition in Test 3. Shahinian v. McCormick, 59 Cal.2d 554, 30 Cal.Rptr. 521, 381 P.2d 377 (1963). The jury considered the question of whether the accident was due to any voluntary action on the part of the plaintiff, and found for the plaintiff that it was not. Again, as in Test #1, Judge Magruder's discussion (supra) of why we leave these questions to the jury is applicable. The Bank argues in its brief that plaintiff's Exhibit #6, the plaintiff's progress record, a hospital record, is evidence from which the jury could have found that: "the doors did not strike plaintiff at all, but that, as she told her own physician, she fell backward from the elevator when the door threatened to close upon her."

█ Plaintiff's Exhibit #6 was admitted in evidence by agreement of counsel for Plaintiff and for the Bank (Transcript p. 66). There is no testimony in the record explaining Exhibit #6, by whom it was prepared or under what circumstances. We feel that the Bank's argument that the information regarding the accident contained in Exhibit #6 was an ac-

curate record of information given by plaintiff herself to her doctor is an unwarranted conclusion by the Bank, since it made no attempt to introduce evidence to substantiate this. Counsel for the Bank attempted to elicit from the plaintiff on cross examination, testimony that she had made such a statement. The following interchange took place:

"Q. Could you have told the people at the hospital that, that you fell backward?

A. Well, I don't think I could, because, I didn't fall backwards, I fell sidewards, on this side. I didn't fall backwards that I know of, because this was the one that I landed on and the one that was hurt, and the side of my head."

Certainly the quoted testimony does not support the Bank's allegation that plaintiff told the hospital attendants that she fell. Our Supreme Court has held in Sax v. Kopelman, 96 Ariz. 394, 396 P.2d 17 (1965) that the trial judge need not submit the issue of contributory negligence to the jury when there is no evidence from which a reasonable man could find the plaintiff guilty of contributory negligence.

■ The fourth requirement is: (4) Plaintiff must not be in a position to show the particular circumstances which caused the offending agency or instrumentality to operate to his injury. Evidence was introduced showing that the offending elevator doors were operated by a complex electronic device serviced and maintained by trained, technically skilled men. No argument has been presented on appeal contesting this point. The jury was properly instructed on it, and we hold that there was sufficient evidence for them to have found that this fourth test was substantiated.

Res ipsa loquitur was applicable to the facts of this case. The lower court did not err in refusing to direct a verdict for the Bank.

The second question raised by the Bank is whether the dismissal of Otis with prejudice amounted to an adjudication in favor of the Bank. It argues that when the liability of one of two defendants is derivative only, based upon responsibility for the active negligence of the other defendant, a dismissal with prejudice as to such other defendant operates as an adjudication in favor of the defendant whose liability is derivative only. It cites in support of this theory DeGraff v. Smith, 62 Ariz. 261, 157 P.2d 342 (1945). The DeGraff case is a personal injury action arising from an automobile accident allegedly caused by the negligence of the defendant-employee of defendant-employer. Negligence on the part of the employee only was pleaded in the complaint. The plaintiffs proceeded on the theory that the action was based on the liability of joint-tortfeasors, and after the evidence was submitted but before the case went to the jury, plaintiffs moved to dismiss the action as to the defendant-employee, and the action was dismissed with prejudice. The Supreme Court determined that the pleadings were susceptible only of the interpretation that the two defendants were master-servant. It held:

"The complaint limits the negligence to the defendant Mundee (employee), against whom the action was dismissed with prejudice, and Mundee having been adjudged as not guilty of any negligence because of the dismissal with prejudice, we hold that the master DeGraff (employer) cannot be held liable." (Explanatory parentheses supplied.) 62 Ariz. 270, 157 P.2d 345.

■ In the instant case, the Bank owed a duty to the plaintiff to keep its premises reasonably safe. Busy Bee Buffet, Inc. v. Ferrell, 82 Ariz. 192, 310 P.2d 817 (1957). The Bank's liability was not derivative, through Otis, as the master's liability was derivative through the negligence of its servant in the DeGraff case (supra). The Bank's liability arose from

its duty to plaintiff and its failure to meet that duty. Negligence on the part of the Bank was pleaded in the Complaint, and as we have previously held herein, was proved against the Bank. The dismissal as to Otis had no bearing on the action based on the liability for negligence on the part of the Bank.

■ We find no merit in the Bank's allegation that the court erred in admitting evidence of out of court experiments and subsequent "bumping" incidents. The evidence was admitted, after a proper foundation had been laid, as rebuttal to the testimony of the district maintenance supervisor of Otis. The condition of the elevators was substantially the same from the time they were installed until the date of the trial, according to the testimony of the Bank's witness. The evidence was relevant and material. The jury heard conflicting testimony and resolved the issue in favor of the plaintiff. We will not disturb their verdict.

■ We find no error in the lower court's charge to the jury that the Bank owed a high degree of care to the plaintiff. There is a division of authority as to the degree of care owed by a building owner to a business invitee with regard to elevators. In our opinion, the better reasoned cases follow the rule expressed in Treadwell v. Whittier, 80 Cal. 574, 22 P. 266, 271, 5 L.R.A. 498 (1889):

> "We know of no employment where the law should demand a higher degree of care and diligence than in the case of persons using and running elevators for lifting human beings from one level to another."

The California Supreme Court, commenting on the Treadwell case in Champagne v. A. Hamburger & Sons, 169 Cal. 683, 147 P. 954 (1951) said:

> "This Treadwell Case appears to be the principal and leading case which fully considers, discusses, and determines the degree of care exacted of owners of passenger elevators, and declares it to be the same as that which applies to common carriers. This case has been followed in a majority of jurisdictions * * * and the rule announced in it is generally accepted as sustained by the weight of authority. * * * "

The Arizona Supreme Court has not been called upon to consider this question. However, in Nieman v. Jacobs (supra) Justices Bernstein and Phelps commented as follows in their dissent:

> "We note that appellee does not dispute that, in accordance with the standard established for common carriers and applied by the great weight of authority to the operation of elevators, it was bound to provide the highest degree of care for the safety of its elevator passengers."

It is to be noted that nothing in the majority opinion is in conflict with this statement.

The judgment in favor of the plaintiff Una Maurer is affirmed.

We will now consider the appeal of Otis from the judgment for the bank on its cross-claim. The fact situation of the previous case as it is applicable in determining this case can be briefly summarized: The Plaintiff was a business invitee in the Bank Building and was struck by an Otis elevator door in that building and knocked to the floor, sustaining injuries for which the Bank was liable.

The Bank, when it contemplated the construction of its new building, supplied Otis with details and specifications of its requirements for elevators for use therein. Subsequently it entered into a contract with Otis to purchase specific Otis elevators for the building. As soon as the elevators were placed, the Bank also entered into a contract with Otis whereby Otis agreed to service and maintain the elevators. The elevators were automatic, and had automatic doors with electronic detecting fields to protect passengers from mishaps. The control unit for these doors was on the top of the elevator cab in a

sealed box, and Otis' district maintenance supervisor testified that only Otis had access to that box by a special key.

The Bank was held liable to the plaintiff for damages for her personal injuries and seeks to recover from Otis.

■■■■■ The Bank owed a duty to the Plaintiff as a business invitee to keep its premises reasonably safe. Busy Bee Buffet, Inc. v. Ferrell, 82 Ariz. 192, 310 P.2d 817 (1957). As we have held (supra) the Bank as the building owner owed a high degree of care to the Plaintiff with regard to its elevators. The duty which an owner or occupant of property is under to keep the premises in a reasonably safe condition cannot be delegated by him so as to avoid personal responsibility. 38 Am. Jur. Negligence 393, Ramirez v. City of Cheyenne, 34 Wyo. 67, 241 P. 710, 42 A.L.R. 245 (1925). We held in the case of Plaintiff against the Bank that the Bank was negligent, and was liable to Plaintiff in tort for damages. This finding that the Bank was negligent with regard to its duty to the plaintiff will not preclude the Bank from recovering damages from Otis based on the contracts for sale and maintenance if it establishes that Otis is liable to the Bank.

■■■■■ The Bank submitted in evidence on the cross-claim two (2) exhibits, the contract it entered into with Otis whereby Otis sold the elevators for use in the Bank building, and the contract it entered into with Otis whereby Otis agreed to maintain those elevators. The Bank also submitted in evidence the entire record ("evidence, instructions, verdict and other proceedings") of the case of Plaintiff vs the Bank, without objection by Otis. It is a well established rule of law that an objection not urged in the trial court will not be considered by reviewing court. Goodman v. Carson, 84 Ariz. 177, 325 P.2d 819 (1958); Pioneer Constructors v. Symes, 77 Ariz. 107, 267 P.2d 740, 41 A.L.R.2d 668 (1954). Otis' objection on appeal to the admission of that record is not well taken.

The contract for sale of elevators entered into by Otis and the Bank contains references to the type of Otis elevators to be supplied for use in the bank building using the Otis trade name designations, such as "Otis Autotronic Automatic". The contract for sale also makes reference to the specifications and drawings supplied by the architect for the Bank, which were the Bank's method of making known to Otis the particular purpose for which their products were required. The Bank, through its architect, relied upon Otis' skill and judgment to supply the type of elevators which would be fit for the purposes specified. Otis represented to the Bank that they were selling Otis elevators, that Otis elevators were good elevators, that they were suitable for the purpose for which they were to be used; and Otis contracted to keep these elevators in good operating condition. This situation falls within the provisions of A.R.S. § 44–215, subsec. 1 (Uniform Sales Act):

"Subject to the provisions of this chapter and of any statute in that behalf, there is no implied warranty or condition as to the quality or fitness for any particular purpose of goods supplied under a contract to sell or a sale, except as follows:

1. Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose."

Otis and the Bank in their briefs proceed under a contractual theory of law which is consistent with the theory of implied warranty which we here apply.

■■■ The implied warranty may not continue for the entire useful life of the product; however, here the elevators were installed in 1955, and were accepted by the architect (the acceptance was on an Otis printed form) as appearing to be satisfac-

tory and in accordance with the contract, in January 1956. In April of 1955 the Bank entered into a maintenance contract with Otis on the elevators which are the subject of the actions herein. That contract states in part:

"Under this contract we will maintain the elevator equipment herein described, on the following terms and conditions: We will use trained men directly employed and supervised by us. They will be qualified to keep your equipment properly adjusted and they will use all reasonable care to maintain the elevator equipment in proper and safe operating condition. * * *"

We hold that this language continued the implied warranty at least through the duration of the maintenance contract, which ran for five years, until April, 1960, during which time the incident causing Plaintiff's injuries arose.

Our Supreme Court recently considered a case of statutory implied warranty in Nalbandian v. Byron Jackson Pumps, Inc., 97 Ariz. 280, 399 P.2d 681 (1965). The Court stated:

"Where the suit is on the contract it is necessary to show that the warranted equipment failed to operate properly during the period for which it was guaranteed."

In this instant case, Plaintiff Maurer established she was struck by the Otis elevator door and knocked to the floor, in the Bank building, in January of 1959. Extensive testimony by Otis' district maintenance supervisor was introduced by the Bank to the effect that the doors were so constructed and maintained that they would never strike a human being attempting to enter or leave the elevator. Yet the jury, who heard the witnesses and had the opportunity to observe their demeanor on the witness stand found in favor of the Plaintiff, that her injuries were caused as a result of being struck by the elevator door. The testimony of Otis' own employee supports our finding that the Bank has shown that the warranted equipment failed to operate

properly within the period of the implied warranty, for the Otis supervisor testified that the equipment was so designed and maintained that the doors would never hit any person, and the jury found that they had.

The Court in the Nalbandian case (supra) held, "[i]n contract, the failure of a product to be reasonably fit for the purpose for which it was [being] used within the guaranteed time is all the plaintiff need prove to establish a prima facie case. The plaintiff need not prove negligence in the manufacture of the warranted product. 1 Williston, Sales § 237 (Rev.Ed.1948); Kessler, The Protection of the Consumer Under Modern Sales Law, 74 Yale Law Journal 262, 272."

The Court continues in the Nalbandian case: "Under the Uniform Sales Act, from which A.R.S. § 44–215 was taken, the liability of the manufacturer to consumer, where there was privity of contract, is a strict liability.

"'The effect of an express warranty undoubtably is to bind the seller absolutely for the existence of the warranted qualities. If an implied warranty is properly called a warranty, the consequences should be similar. It should make no difference, therefore, whether the seller was guilty of any fault in the matter. Such is the well-settled law of England. And either because of the enactment of the Sales Act or because of an interpretation of the common law most jurisdictions in the United States follow the English rule.' * * * 1 Williston, Sales, § 237 (Rev.Ed.1948.) quoted with approval in Patterson v. Orangeburg Fertilizer Co., 117 S.C. 140, 108 S.E. 401, 405."

Otis urges that its duties were those specifically recited by the maintenance contract, and that it was only bound to use the standard of "reasonable care" in performing these duties. Otis argues that since there was no showing by the Bank of any breach of a specific provision of the main-

tenance contract, there can be no recovery against Otis for the damages assessed against the Bank in favor of Plaintiff. The breach of contract from which the cause of action of the Bank arose was a breach of the original contract of sale, which carried the statutory implied warranty that the product sold would operate properly during the period for which it was guaranteed. The maintenance contract, as we pointed out above, operated to extend the time of the implied warranty, but it is not the basis of this cause of action. We are not here concerned with a breach of the maintenance contract, but with a breach of the statutory implied warranty of fitness for the purpose for which the product was sold. The modern trend is to refuse to permit the manufacturer to define the scope of its own responsibility for defective products, Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 161 A.2d 69, 75 A.L.R.2d 1; Greenman v. Yuba Power Products, Inc., 59 Cal.2d 57, 27 Cal.Rptr. 697, 377 P.2d 897, (1962); General Motors Corp. v. Dodson, 47 Tenn.App. 438, 338 S. W.2d 655, 658–661; State Farm Mut. Auto. Ins. Co. v. Anderson-Weber, Inc., 252 Iowa 1289, 110 N.W.2d 449, 455–456; Pabon v. Hackensack Auto Sales, Inc., 63 N.J.Super. 476, 164 A.2d 773, 778; Linn v. Radio Center Delicatessen, 169 Misc. 879, 9 N.Y.S.2d 110, 112.

The elevator was located in the Bank building, and the Bank as we held above exercised sufficient control over it, to bring the elevator within the "exclusive control" of the Bank for the purposes of the application of the doctrine of res ipsa loquitur in favor of Plaintiff. However, as between the Bank and Otis, according to the testimony of an Otis supervisor, only Otis had access to the elevator door mechanism. This was located in a position which would not be readily accessible, on the top of the elevator cab. It was in a box which could be opened only by Otis' employees with their special key. In determining that res ipsa loquitur was applicable in the tort action by Plaintiff against the Bank, we

found that the Bank had legal control of the elevator within the definition set forth in Rodin v. American Can Co. (supra). The Rodin case defined "exclusive control" as it is used in the test for res ipsa loquitur as, "authority to authorize use of agency or instrumentality." The Bank, as owner of the building, had that authority, and had legal control of the use of the elevator. As between the Bank and Otis in an action based on contract, the record shows that Otis was in actual physical control of the mechanism of the elevators. The Bank by contract had relinquished to Otis physical control of the elevators for the purpose of maintenance and repair, while it retained legal control of them since it alone could authorize their use.

Otis in its brief placed a great deal of emphasis on the dismissal of Otis with prejudice from the original case by Plaintiff. We have approached the appeal of Otis from the judgment for the Bank on the theory of strict liability for implied warranty, which grants recovery to the purchaser against the manufacturer of a product which fails to operate properly without a showing of fault on the part of the manufacturer. The question of whether the dismissal with prejudice of Otis in the original action, (which was an adjudication on the merits as to all facts pleaded by the plaintiff, DeGraff v. Smith, 62 Ariz. 261, 157 P.2d 342 (1945); Cochise Hotels, Inc. v. Douglas Hotel Operating Co., 83 Ariz. 40, 316 P.2d 290 (1957),) amounted to a determination of no negligence on the part of Otis and was res judicata in the Bank's action against Otis, becomes a moot point. Rulings on evidence which became immaterial in view of the theory of the case adopted by the court on appeal will not be considered. Kline v. Kline, 14 Ariz. 369, 128 P. 805 (1912).

The remedies for breach of warranty are statutory, and provide, among other possible elections, that the buyer may keep the goods and maintain an action against the seller for damages for the breach of warranty. A.R.S. § 44–269, subsec. A, par. 2.

The statute further provides that the measure of damages for breach of warranty is the loss directly and naturally resulting, in the ordinary course of events, from the breach of warranty. A.R.S. § 44–269, subsec. F.

The theory behind the rule of strict liability in Breach of warranty cases, set forth in detail in the Nalbandian case (supra), is that the pecuniary loss will ultimately fall on the one who caused it. Thus if the plaintiff recovers from the buyer of the product for injuries received from a malfunction of that product, the buyer may recover from the seller, who then may recover from a supplier or materialman whose component part may have been the cause of the malfunction. If the buyer cannot recover from the seller he cannot recover from anyone for the defective character of the goods which he has bought. 1 Williston Sales § 237a (Rev.Ed.1948). The judgment obtained by the Plaintiff was a pecuniary loss to the Bank directly resulting from the breach of the warranty. Had the elevator door performed as it was sold to perform, the Bank would not have been liable in damages to the Plaintiff.

Manufacturers are liable on the basis of breach of warranty for damages for personal injuries received by third parties and recovered by them from one in privity of contract with the manufacturer, Bankers Indemnity Insurance Co. v. Frigidaire Sales Corp., D.C., 113 F.Supp. 405 (1953); Natkin & Co. v. R. F. Ball Construction Co., 255 Iowa 1156, 123 N.W.2d 415 (1963); United Pac. Ins. Co. v. Balcrank Inc., 175 Ohio St. 267, 193 N.E.2d 920 (1963); Tremeroli v. Austin Trailer Equipment Co., 102 Cal.App.2d 464, 227 P.2d 923 (1951).

The loss here directly and naturally resulting, in the ordinary course of events, from the breach of warranty was the judgment in favor of plaintiff for dam-

ages for personal injuries. The Bank is entitled to recover the amount of the damages awarded against it to the Plaintiff on the theory of strict liability for breach of the statutory implied warranty of Otis.

Judgment affirmed.

CAMERON, Acting C. J., and FRANK X. GORDON, Jr., Superior Court Judge, concurring.

NOTE: Chief Judge HENRY S. STEVENS having requested that he be relieved from consideration of this matter, Judge FRANK X. GORDON, Jr., was called to sit in his stead and participate in the determination of this decision.