447 P.2d 879

OTIS ELEVATOR COMPANY, Appellant,

v.

VALLEY NATIONAL BANK, Appellee.

No. 2 CA–CIV 380.

Court of Appeals of Arizona.

June 5, 1968.

Mesch, Marquez & Rothschild, by John K. Mesch, Tucson, for appellant.

Lesher, Scruggs, Rucker, Kimble & Lindamood, by Thomas A. Zlaket, Tucson, for appellee.

HATHAWAY, Chief Judge.

The plaintiff sued the Valley National Bank (hereafter called Bank) for personal injuries resulting from being struck by an elevator door in the Valley National Bank building in Tucson. The Bank filed a

third party complaint against the Otis Elevator Company (hereafter called Otis) who had, under contracts between the Bank and Otis, installed and maintained the elevator in question. The Bank alleged rights of indemnity against Otis based on Otis' negligence and/or breach of warranty. Otis' answer consisted of admissions and several denials and alleged no affirmative defenses. The Bank then moved for summary judgment on its third party complaint against Otis which motion was granted on April 21, 1966. The plaintiff's action against the Bank was tried on June 21, 1966 and the plaintiff recovered judgment against the Bank. Otis timely filed a motion for new trial alleging error in the granting of the summary judgment. This motion was denied on October 28, 1966. Otis then filed its notice of appeal on December 16, 1966. This appeal by Otis from the granting of the summary judgment is the sole issue before us.

Otis had manufactured, sold and installed the elevator in question. At the time of the accident there was a contract of sale and maintenance between the Bank and Otis.

The questions presented to this court are:

1. Is Otis judicially estopped from appealing?

2. If not, was summary judgment properly granted?

The Bank contends that since counsel for Otis, after the summary judgment against Otis, associated with the Bank's counsel in the defense of the Bank against the plaintiff in the subsequent trial, Otis is judicially estopped from appealing from that summary judgment. The Bank reasons that for Otis to aid in the defense of the Bank is inconsistent with this appeal claiming error in the summary judgment. It claims that Otis' actions in the main trial were at least an implied admission of the correctness of the summary judgment. Otis replies that its actions in the main trial are not inconsistent with its position in this appeal since it undertook to assist the defense of the Bank to protect itself for in

this situation the Bank might not be adequately concerned about liability or the amount of judgment.

■ We do not find it necessary to resolve the correctness of the reasoning of the Bank or Otis since our Supreme Court has clearly laid down the requirements for judicial estoppel in Adams v. Bear, 87 Ariz. 288, 294, 350 P.2d 751, 755 (1960):

"* * * a party is bound by his judicial declarations and may not contradict them in a subsequent proceedings [sic] *involving the same parties and questions.*" (Emphasis supplied)

See also Martin v. Wood, 71 Ariz. 457, 229 P.2d 710 (1951) and Rossi v. Hammons, 34 Ariz. 95, 268 P. 181 (1928).

■ In the summary judgment action by the Bank against Otis only those two parties were involved since the action was based upon the Bank's third party complaint against Otis. The plaintiff in the main action against the Bank was in no way involved in this summary judgment action. The question in the summary judgment proceeding was whether Otis was strictly liable to the Bank for the plaintiff's injuries upon Otis' contract with the Bank for the sale and maintenance of the elevator involved. However, in the subsequent trial the only parties were the plaintiff and the Bank; Otis was not a party to that action. There, the sole question was whether the Bank was liable to the plaintiff, a business invitee, for the plaintiff's sustained injuries.

We hold that Otis is not precluded from appealing due to its aiding in the Bank's defense against the plaintiff. Otis' counsel withdrew as counsel for the Bank immediately after the verdict in favor of the plaintiff and are now in no way associated with the Bank's counsel upon this appeal. We find no improper conduct on the part of Otis or its counsel.

■ In dealing with the propriety of the trial court's entry of summary judgment, Otis refers this court to many facts which took place at the trial and the judgment

resulting from that trial, all of which took place approximately three months subsequent to the rendition of the summary judgment. The Bank correctly concludes that any reliance by Otis upon those facts and judgment is improper since the sole question involved here is whether, at the time of the Bank's motion for summary judgment, there was presented by Otis a genuine and material issue of fact. The correctness of this conclusion is admitted by Otis in its reply brief.

The Bank submitted with its motion for summary judgment the affidavit of Philip G. Ring, manager of the Valley National Bank building on the corner of Congress and Stone Avenue in Tucson, Arizona. That affidavit states that in June of 1960 the Bank and Otis entered into a modernization contract of the Bank's present elevator system and that in March of 1961 the Bank and Otis executed a five-year maintenance agreement whereby Otis agreed to maintain in a fit and safe operating condition the elevator in question. Also, the affidavit states that said maintenance agreement was in effect on January 15, 1965, the date of the alleged accident which resulted in injury to the plaintiff. Philip Ring further states in his affidavit that the Bank relied upon the representations of Otis and upon the implied representations concerning proper maintenance and repair of the elevator system; that all maintenance and repairs on the elevator system were left entirely up to Otis pursuant to the maintenance agreement; that no direct control or supervision over the actual maintenanace and repairs of the elevator system was exercised by any agent or employee of the Bank. Ring's affidavit stands uncontradicted.

Otis defended against the Bank's motion for summary judgment alleging in its affidavit:

"That the automatic elevator doors may be regulated to remain 'at rest' for any period which the customer desires, depending upon its particular needs and its particular traffic flow.

"That at no time has the Valley Bank Building advised Otis as to its particular needs in relation to the time which the doors should remain at rest. Neither did they during the period of two weeks prior to the injury of Dorothea Wilson (plaintiff) advise Otis of any malfunction of the door which is alleged to have struck Mrs. Wilson."

Otis contends that a material and genuine issue of fact was presented as to whether the Bank exercised due care in failing to inform Otis of its needed "at rest" period for the elevator system.

In its motion for summary judgment, the Bank cited First National Bank of Arizona v. Otis Elevator Company, 2 Ariz.App. 80, 406 P.2d 430 (1965), supplemented at 2 Ariz.App. 596, 411 P.2d 34 (1966), and relies heavily on that case in this appeal. The facts there are similar to those in the instant case and involved an interpretation of a similar maintenance contract. This court held that Otis was strictly liable to the Bank for the injuries to the plaintiff (who was struck by an elevator door while attempting to enter the elevator) based upon the implied warranties under the sale contract to the Bank, which implied warranties were extended by the subsequent maintenance agreement between the Bank and Otis. That contract was in effect at the time that the plaintiff sustained her injuries. We stated:

"As between the Bank and Otis in an action based on contract, the record shows that Otis was in actual physical control of the mechanism of the elevators. The Bank by contract had relinquished to Otis physical control of the elevators for the purpose of maintenance and repair, while it retained legal control of them since it alone could authorize their use.

\* \* \* \* \* \*

"The loss here directly and naturally resulting, in the ordinary course of events, from the breach of warranty was the judgment in favor of plaintiff for damages for personal injuries. The Bank

is entitled to recover the amount of the damages awarded against it to the Plaintiff on the theory of strict liability for breach of the statutory implied warranty of Otis." 2 Ariz.App. at 90–91, 406 P.2d at 440.

Additionally, elevator doors should not operate so as to forcibly knock a person down. It would seem apparent from the sales contract in the instant case that Otis is in accord with this belief. In Otis' modernization contract with the Bank an express warranty that the doors will not so contact persons is stated:

"An electronically operated proximity detector device will be installed on the leading edge of the car doors. This device will contain specially designed electronic tubes and suitable antennae enclosed in an insulated metal chassis so that the antennae, electronic tubes, and associated equipment are not visible. The device will create a three-dimensional zone of detection for virtually the entire height of the door opening. This zone of detection will extend a short distance in front of the leading edge of both the car doors and the hoistway doors. The doors will be prevented from closing from their fully open position if a person within the zone of detection causes the detector to operate. The zone of detection will move forward as the doors close and the presence of a person within this zone will operate one or more of the electronic tubes to stop and reopen the doors, after which the doors will again start to close."

This conclusion is further substantiated in First National Bank v. Otis Elevator Company, supra, at page 89, 406 P.2d 430.

■■ Otis' affidavit and the record that were before the trial court at the time of the Bank's motion for summary judgment alleged no facts which if Otis proved would relieve Otis of its duty to indemnify the Bank or to make Otis and the Bank joint tort-feasors. The general allegations in the affidavit of Otis' representative, C. O. Eagler, present no material or genuine issue of fact that relieve Otis of its obligation to indemnify the Bank. The mere statement, as above noted, regarding the "at rest" period of the elevators does not overcome Otis' strict duty to maintain the elevators in such working order that they will not strike any person entering or exiting the elevators. Further, the general negative statement contained in Eagler's affidavit that the Bank did not advise Otis of any malfunction of the elevator door two weeks prior to the injury presents nothing which would exculpate Otis' duty to the Bank under both the modernization and maintenance agreements. Negative allegations are insufficient to present a genuine issue of fact. Stevens v. Anderson, 75 Ariz. 331, 256 P.2d 712 (1953).

The rendering of summary judgment in the trial court in favor of the Bank against Otis is affirmed.

NOTE: Judge HERBERT F. KRUCKER having requested that he be relieved from consideration of this matter, Judge NORMAN S. FENTON was called to sit in his stead and participate in the determination of this decision.

MOLLOY, Judge (specially concurring).

I am unable to concur in Judge Hathaway's opinion. It seems to me that there was an issue of fact between Valley Bank and Otis Elevator which precluded summary judgment. However, I arrive at the same result—affirmance—by another route.

First, as to why I believe there was an issue of fact remaining—the original suit brought by the injured passenger is one sounding only in negligence and only against Valley Bank. Valley Bank cross-claimed against Otis Elevator under two theories, negligence and warranty. As far as negligence is concerned, it seems very clear that negligence on the part of Otis was not conclusively established at the time of the motion for summary judgment or, for that matter, at any time thereafter. If the Valley Bank was entitled to a judgment over against Otis, it must have been on the theory of warranty.

Otis is both the seller and the maintainer of this elevator and there are warranties expressed and implied arising out of both contracts. However, as I read these contracts, they are in no way insurance contracts nor do they guarantee that the machinery will not temporarily be out of adjustment.

Under our law, Otis warranted that this elevator was merchantable and reasonably fit for the purposes for which it was intended. A.R.S. § 44–215 (since repealed by the Uniform Commercial Code), and see Nalbandian v. Byron Jackson Pumps, Inc., 97 Ariz. 280, 399 P.2d 681 (1965). At the time this summary judgment was made, there was certainly no conclusive showing that this elevator was unmerchantable or not reasonably fit for its intended purposes, nor was this conclusively established at the time of the trial between the plaintiff and Valley Bank, because these were not among the issues tried between those parties.

The motion for summary judgment filed by Valley Bank is not supported by an affidavit stating facts which would establish that this elevator was unmerchantable or not reasonably fit for the purposes for which it was intended. As a matter of fact, there are no contentions made that either of these two implied warranties were breached nor is any specific express warranty on the part of Otis Elevator relied upon.

In resisting the motion for summary judgment, Otis Elevator conceded that, if the negligence proved by the plaintiff related to installation or maintenance, it would be liable over to the bank. However, it pointed out that elevator doors can be adjusted in a variety of ways, depending upon the amount and type of "traffic" using the elevator, and that Valley Bank may have been negligent in failing to instruct Otis as to its particular needs in this respect, or:

"* * * perhaps the evidence will prove that there had. been a prior malfunction of the particular timing device on the particular door or a malfunction of the safety detector on the door of which the bank had notice but had failed to notify or advise Otis so that it could have been corrected * * *."

There is nothing in the record to negate this possibility, and, as a matter of fact, at the time of trial, evidence was developed by the plaintiff (but denied by the bank's employees) which tended to establish that Valley Bank did have prior notice of malfunction of the door of this elevator which it had not reported to Otis.

Reliance upon First National Bank of Arizona v. Otis Elevator, 2 Ariz.App. 80, 406 P.2d 430 (1965), to uphold the granting of this summary judgment, I believe, is misplaced. The procedural posture is entirely different. In *First National,* the case went to trial and an adverse decision against Otis was affirmed. This is a far cry from what we have here—a judgment on a summary proceeding which is improper if there is the "slightest doubt as to the facts." Peterson v. Valley National Bank of Phoenix, 90 Ariz. 361, 362, 368 P.2d 317, 318 (1962).

There is language in *First National* which taken in its broadest terms might tend to support this judgment:

"The breach of contract from which the cause of action of the Bank arose was a breach of the original contract of sale, which carried the statutory implied warranty that the product sold would operate properly during the period for which it was guaranteed." 2 Ariz.App. at 90, 406 P.2d at 440.

I know of no "statutory" warranty that a product will always operate properly. There are very few pieces of machinery that do not get out of adjustment and the fact that occasionally a product malfunctions does not, in my opinion, establish that it is not reasonably fit for the purposes intended or not of merchantable quality.

But, though I reject this asserted grounds for affirming the order granting summary judgment, I agree with the first contention

made by Valley Bank on appeal to the effect that Otis is not in a position to question this judgment because of its assumption of the defense of the principal action. In order to show the validity of this contention, the briefs filed in this court and the record of the trial between the plaintiff and Valley Bank must be analyzed.

The Valley Bank's answering brief in this court states that the association of Otis' counsel in its defense was "* * * at the specific suggestion and request of counsel for Otis." The statement is also made that following this association:

"For all practical purposes, they [Otis] assumed the entire defense of the bank at their own request."

In its reply brief, Otis takes no direct issue with these statements. Rather, the following statement in the reply brief lends support to the assertions:

"This action [association of counsel] merely enabled Otis to defend the action since it appeared at the time of *assuming the defense,* that Otis might be made to bear the entire loss." (Emphasis ours)

Though a counsel for Valley took some part in the trial, the transcript indicates that record counsel for Otis, acting as counsel for Valley Bank, was much more active. All of the plaintiffs' witnesses were cross-examined by Otis counsel and all of the witnesses for the defense were examined by this same counsel with only one exception. All major arguments and stipulations were made by counsel for Otis. At the beginning of the trial, counsel for Otis asked the court to note: "The *substitution* of counsel." (Emphasis ours.) In the plaintiffs' opening statement, the following was stated without any response from counsel for Otis:

"Prior to today there were proceedings between the defendant Valley National Building and Otis Elevator to the extent that whatever the Valley Bank is obligated to pay pursuant to these proceedings the Otis Elevator is obligated to indemnify the Valley Bank. *As a practical matter the defense then would be carried on by the Otis Elevator Company represented by Mr. Mesch."* (Emphasis ours)

Counsel for Otis requested, at the commencement of the trial, findings of fact and conclusions of law. The case was tried to a court commissioner and, at the conclusion of the trial, the court made findings which included the following:

"The Plaintiff DOROTHEA WILSON was injured as a proximate result of the negligence of the VALLEY NATIONAL BANK in the *operation* and maintenance of their self-service elevator on January 15, 1965." (Emphasis ours)

After entry of judgment on the findings in favor of the plaintiff, counsel for Otis moved to withdraw as counsel for Valley Bank, and, in the very same motion, made a motion for new trial and to amend judgment. A reading of the memorandum supporting this motion indicates that had it not been for the court's finding of negligence in the "operation" of the elevator, Otis would not have sought to disassociate itself from Valley's defense:

"By virtue of the court's Findings of Fact and Conclusions of Law it *now* appears that there is a conflict of interest between the attorneys for Otis and the attorneys for the Bank, and counsel respectfully requests that they be allowed to withdraw as counsel for the Bank immediately prior to oral argument on this matter.

\* \* \* \* \* \*

"The Findings of Fact and Conclusions of Law state that plaintiff sustained injury caused by the closing of the elevator doors; that the plaintiff was entitled to the benefit of res ipsa loquitur and that the injuries were caused by '* * * the negligence of the Valley National Bank in the operation and maintenance of their self-service elevator * * *'. *It is quite obvious from the use of the word 'operation' that*

*the trier of fact found that both defendants were negligent, the bank in its operation of the elevator and Otis Elevator in the maintenance of same.*

\* \* \* \* \* \*

"It is submitted that the Third Party Defendant [Otis] *in light of this evidence* [referring to evidence elicited from a Mr. Barber during the trial that other passengers on these elevators had been having similar trouble] is entitled to either, (1) a new trial on the issue of negligence of the Valley National Bank; or, (2) that the summary judgment of April 21, 1966 be set aside and the Judgment, Findings of Fact and Conclusions of Law of September 16, 1966 be amended so as to clearly show that the Valley National Bank was negligent in the operation of its elevators and Otis Elevator Company was negligent in performing the maintenance and therefore, jointly liable for the injury to plaintiff." (Emphasis ours)

The above motion to withdraw as counsel was granted and the motion for new trial and to amend judgment was denied.

On the basis of the foregoing, and other matters which I will touch upon subsequently, I agree with the appellee's contention that Otis is not now in a position to question the propriety of the summary judgment against it. The history of this case seems to be sufficiently unique so that no law has been called to our attention which is directly pertinent to the estoppel problem presented. I go to two well-established corollaries of the law of estoppel which appear to be controlling by analogy.

Our Supreme Court has indicated:

"\* \* \* that the facts of each case must be looked to and applied by analogy rather than by rule in equitable estoppel." Munger v. Boardman, 53 Ariz. 271, 278, 88 P.2d 536, 539 (1939).

The first analogy taken is to the law of insurance. The general law appears to be well established that, if a liability insurance company undertakes the defense of an action against its insured, without

a reservation of rights, and loses the case, it is "estopped" from asserting forfeiture of or noncoverage under the liability policy. 14 Couch on Insurance 2d (Anderson) § 51:159, at 651–52; 45 C.J.S. Insurance § 714, at 684–686; Annot.: Liability Insurance—Waiver—Estoppel, 38 A.L.R.2d 1148 et seq.

There is a diversity of authority in the liability insurance cases as to whether there must be a showing of prejudice to the insured before the estoppel arising from a defense without reservation of rights is to be invoked. See 14 Couch on Insurance 2d § 51:160, at 652–53; and Annot., supra, § 5, 38 A.L.R.2d at 1157–61.

Here, if prejudice be necessary, I find it in the nature of the defense provided by Otis. The reason advanced by counsel for Otis for the motion to withdraw, and to amend judgment is the finding of the trial court of negligence in "operation." This apparently unexpected finding came out of a trial conducted on Valley's behalf by Otis and may very well have been precipitated in part by the following statement of Otis counsel during the trial:

"MR. MESCH: If the Court please, for the same reasons we offer the testimony. The bank has a certain duty. *They have a duty to check that equipment* and see if there was something wrong with it and if there is something wrong to fix it. They have—*under their contract they are required to report those things to Otis.* It again goes to the question of due care." (Emphasis ours)

The contract betwen Otis and the Valley Bank contains no express requirement that Valley examine these elevators nor is there any express requirement that malfunctions be reported to Otis. To the contrary, the following obligations are imposed upon Otis under this contract:

"We will use trained men directly employed and supervised by us. They will be qualified to keep your equipment properly adjusted, and they will use all reasonable care to maintain the elevator

equipment in proper and safe operating condition.

"We will regularly and systematically examine, adjust, lubricate as required, and if, in our judgment, conditions warrant, repair or replace:

### "MACHINE, MOTOR, GENERATOR AND CONTROLLER PARTS,
### *including*

[A listing of many parts follows which would seem to include the closure and safety devices on the elevator doors.]

\*   \*   \*   \*   \*   \*

"To examine periodically all safety devices and governors and make our customary annual safety tests."

If any duties rested upon the bank to make inspections and report malfunctions to Otis, they would be implied from these provisions in the contract:

"This contract includes emergency minor adjustment callback service during regular working hours and also during any overtime hour. Overtime repairs and overtime extra examination is included as a part of this contract for Elevators 155476-7.

\*   \*   \*   \*   \*   \*

"It is agreed that we do not assume possession or management of any part of the equipment but such remains yours exclusively as the owner (or lessee) thereof."

Inasmuch as this contract is a form contract prepared by Otis, which in case of ambiguity might very well be construed against Otis, see Covington v. Basich Bros. Construction Co., 72 Ariz. 280, 284, 233 P. 2d 837 (1951), I consider the judicial admission against interest made for Valley by Otis counsel, as to the duty to inspect and report malfunctions, to be one that would not ordinarily be made by counsel whose only obligation was to protect the interests of Valley Bank.

And, still using the liability insurance analogy, the fact that counsel for Valley assisted Otis counsel in the defense of this action does not bar the application of the estoppel doctrine. Tulare County Power Co. v. Pacific Surety Co., 43 Cal.App. 315, 185 P. 399 (1919).

I now take analogy to the law of "judicial estoppel." The exact ingredients of this doctrine are not formalized and it may very well be that several principles of law have been miscegenated under the label of "judicial estoppel." See 28 Am.Jur.2d Estoppel and Waiver §§ 68–72 inclusive, at 694–704.

Expressions of the rule are often made in picturesque but essentially inexact language, such as that a party cannot " \* \* \* blow both hot and cold," McDanels v. General Ins. Co. of America, 1 Cal.App.2d 454, 36 P.2d 829, 832 (1934), or " \* \* \* swap horses in midstream," Roberts v. Grogan, 222 N.C. 30, 21 S.E.2d 829, 830 (1942), or " \* \* \* play fast and loose with the courts \* \* \*," Scarano v. Central R. Co. of New Jersey, 203 F.2d 510, 513 (3d Cir. 1953).

In espousing this doctrine in Martin v. Wood, 71 Ariz. 457, 229 P.2d 710 (1951), our Supreme Court indicated that reliance and injury were not necessary elements of this special aspect of the law of estoppel in a quote from 31 C.J.S. Estoppel § 117:

" 'The elements of reliance and injury which are essential to the operation of equitable estoppel do not enter into judicial estoppel, at least not to the same extent; and while some authorities in applying the doctrine of judicial estoppel have taken cognizance of the presence or absence of such elements, this has been said to be the result of confusing the two doctrines.' " 71 Ariz. at 459, 229 P.2d at 712.

Also, in *Martin,* our Supreme Court gave us some indication of the nature of at least one facet of this law when it quoted with approval from Hatten Realty Co. v. Baylies, 42 Wyo. 69, 290 P. 561, 566, 72 A.L.R. 587 (1930):

" 'This doctrine is said to have its foundation in the obligation under which every

man is placed to speak and act according to the truth of the case, and in the policy of the law to suppress the mischiefs from the destruction of all confidence in the intercourse and dealings of men, if they were allowed to deny that which by their solemn and deliberate acts they have declared to be true. And this doctrine applies with peculiar force to admissions or statements made under the sanction of an oath, in the course of judicial proceedings. The chief security and safeguard for the purity and efficiency of the administration of justice is to be found in the proper reverence for the sanctity of an oath.' " 71 Ariz. at 459–460, 229 P.2d at 712.

Testimony produced at this trial by Otis established that Otis personnel inspected this elevator on January 13 and January 20, 1965. This accident occurred on January 15, 1965. The Otis employee found no maladjustment as to this door at the time of these inspections. The Otis district maintenance supervisor testified that, between the time of the accident and February of 1965, there had been no adjustments made to this door and that, if there had been a malfunction in the manner described by the plaintiff, there would have had to have been adjustments made because such a malfunction, in his opinion, would not "right itself."

These doors were manufactured by Otis, sold by Otis to Valley, and exclusively maintained by Otis at all pertinent times. Hence, Otis should be in a position to know whether the testimony so produced was accurate. See In the Matter of the Estate and Guardianship of Purton, 7 Ariz.App. 526, 441 P.2d 561 (1968). On appeal here, the only suggestion made by Otis as to what it would prove, in the trial of the cross-claim, is that the bank was negligent in failing to report malfunctions of this door. I regard this as an impermissible "about face" (quote from *Martin*, 71 Ariz. 460, 229 P.2d 712) from the sworn testimony of Otis representatives in the trial of this action between the plaintiff and Valley Bank.

The reinforcing effect of both of these species of "estoppel" prompts me to believe that Otis is barred from questioning this summary judgment.

FENTON, Superior Court Judge (dissenting):

I agree in part with the opinion of Judge Hathaway and in part with the specially concurring opinion of Judge Molloy, but in this partial agreement with both opinions, I reach an entirely different conclusion.

I agree with Judge Molloy that summary judgment should not have been granted since there were material issues which remained to be litigated. Our Supreme Court has repeatedly held that a motion for summary judgment should not be granted where there are any contested issues of fact, and that a motion for summary judgment is not to resolve disputed issues but to determine whether there are, in fact, any such issues remaining to be litigated. Peterson v. Valley National Bank, 90 Ariz. 361, 368 P.2d 317 (1962); Elson Development Co. v. Arizona Savings & Loan Association, 99 Ariz. 217, 407 P.2d 930 (1965); Elerick v. Rocklin, 102 Ariz. 78, 425 P.2d 103 (1967).

Although the motion for summary judgment must be determined as of the time made, by hindsight, it is obvious from the evidence produced at the trial between the injured party and Valley National Bank, that there was, in fact, a triable issue as raised in the affidavit submitted in opposition to the motion for summary judgment, to wit: that the Valley National Bank had prior notice of malfunctions of the elevator which had not been reported to the Otis Elevator Company.

I also agree with Chief Judge Hathaway, for the reasons he sets forth, that Otis was not judicially estopped from appealing the motion for summary judgment.

Accordingly, for the foregoing reasons, it is my conclusion that the order of the court below, granting the motion for summary

**506**

judgment, should be reversed and set aside and the matter sent back to determine the extent of the liability of Valley National Bank and Otis in payment of the judgment obtained after trial.