Travis O'Neal **JAMES,**
**Plaintiff–Appellant,**

v.

**OTIS ELEVATOR COMPANY,**
**Defendant–Appellee.**

**No. 87–8517.**

United States Court of Appeals,
Eleventh Circuit.

Sept. 6, 1988.

---

John P. Partin, Hirsch, Beil & Partain, P.C., Peter B. Hoffman, Columbus, Ga., for plaintiff-appellant.

M. Diane Owens, Long, Weingerg, Ansley & Wheeler, Kathryn S. Whitlock, Atlanta, Ga., for defendant-appellee.

Before TJOFLAT and HATCHETT, Circuit Judges, and LYNNE *, Senior District Judge.

TJOFLAT, Circuit Judge:

This diversity suit arises out of an accident in the work place, the Bibb Company textile mill in Columbus, Georgia. Travis O'Neal James, a Bibb employee, was injured when he stepped backward into an open elevator shaft and fell two stories. James thought he was stepping onto the elevator platform, but unbeknownst to him the elevator had moved to the floor above. In this case, James seeks to recover money damages for his injuries from Otis Elevator Company (Otis) on the theory that Otis negligently maintained the elevator and that such negligence caused his injuries. The district court granted Otis summary judgment. The court concluded that James is barred from recovery on two grounds: first, he was contributorily negligent as a matter of law, and second, he failed to produce any evidence from which a jury could infer that Otis was negligent. James appeals, and we affirm.

## I.

Since this is an appeal from the grant of summary judgment, we must examine the evidence in a light most favorable to James. *See* Fed.R.Civ.P. 56(c); *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir. 1987). We may affirm only if there is no genuine issue of material fact and if Otis is entitled to judgment as a matter of law. *See id.*

The elevator in question consisted of a metal floor and two metal side walls, and was open front and back. The elevator traveled in an enclosed shaft which ran from the basement of the mill to the top floor, the third. On each floor, the shaft opening was covered with a hoistway door, which opened vertically. A safety device, called an "interlock," prevented the door from being raised unless the elevator was present at that floor. The interlock contained a circuit breaker, such that once the hoistway door was raised, the elevator could not move.

James started working for the mill in May 1984 as a "hauler." His responsibilities required him to transport cotton waste within the mill, using the mill's elevator.

At the time he was employed, James' supervisor thoroughly trained James in the use of the elevator. He told James that to summon the elevator, he should look through the small window in the hoistway

* Honorable Seybourn H. Lynne, Senior U.S. District Judge for the Northern District of Alabama, sitting by designation.

door to see whether the elevator was at that floor; if it was not, he should press the "call" button located next to the hoistway door and hold it down until the elevator arrived. Once the elevator platform became even with his floor, he should release the call button, stopping the elevator, and raise the hoistway door. This would prevent the elevator from moving to another floor.

On the morning of the accident, July 12, 1984, James was moving cotton waste from the second floor of the mill. He summoned the elevator by holding down the call button until the elevator arrived. He then released the call button and raised the hoistway door a few feet—far enough, he thought, to trigger the interlock's circuit breaker so that the elevator could not move. James thereafter went to his cart, which was thirty feet away, and began pushing it toward the elevator. The cart was difficult to push, so James stepped around to the front of the cart and, while walking backward, began to pull it. As he neared the elevator doorway, which was now behind him, James reached around with his right hand and fully opened the hoistway door, while continuing to pull the cart with his left hand. Without looking behind him, he stepped backward through the elevator doorway. Unfortunately, the elevator had moved to the third floor, and James fell down the elevator shaft. He suffered a broken arm, a mild concussion, and several cuts and bruises.

Nineteen months later, James' lawyer hired a former Otis engineer, Clyde Gober, to inspect the elevator and to determine, if possible, why the elevator moved after James raised the hoistway door. Gober was unable to learn anything from his inspection because Otis, in the interim, had overhauled the elevator, including the interlock. Under the circumstances, all that Gober could do was to hypothesize all of

the possible reasons why the interlock malfunctioned. According to Gober, either the interlock's electrical system could have "shorted out," or foreign matter, such as cotton lint, dirt, or rust, could have caused the interlock's circuit breaker to stick in a closed position, thus permitting the elevator to move after James raised the hoistway door.

On February 7, 1986, James brought this suit against Otis.[1] James' complaint alleged (1) that Otis' service contract with Bibb required Otis to exercise due care in the maintenance of the elevator for the benefit of Bibb and its employees; (2) that Otis negligently failed to exercise such care; and (3) that such failure was the proximate cause of his injuries. Otis answered the complaint, admitting its contractual obligation to service the elevator but otherwise denying James' allegations. As an affirmative defense, Otis asserted that James was contributorily negligent because he stepped into the elevator shaft without first looking to see whether the elevator was there.

Following a round of discovery depositions, Otis moved for summary judgment. The court granted its motion, concluding that the record contained no evidence of negligence and that James' negligence barred his claim, and gave Otis a final judgment. James appeals. We agree with the district court that James has not made out a case of negligence against Otis. We therefore affirm without reaching the question of James' contributory negligence.

## II.

The contract between Otis and Bibb required Otis to maintain the elevator in a safe condition. Otis was not an insurer of the safety of the elevator; its obligation was to "use all reasonable care to maintain the elevator equipment in proper and safe operating conditions."[2] James does not

---

1. James brought the suit in Georgia state court, and because the parties were of diverse citizenship, Otis removed it to the district court pursuant to 28 U.S.C. §§ 1332(a)(1), 1441(a) (1982).

2. The contract between Otis and Bibb provided in part as follows:

Under this contract [Otis] will maintain the elevator equipment herein described, on the following terms and conditions:
[Otis] will use trained men directly employed and supervised by us ... and they will use all reasonable care to maintain the elevator

432

contend that Otis failed to inspect the elevator on a timely basis. Rather, James contends that one or both of the conditions Gober described were present when Otis last inspected the interlock, and that, in the exercise of due care, Otis should have discovered the same.

There is no evidence [3] that one or both of the conditions Gober described were present during the last inspection Otis performed prior to the accident. Because James, as the claimant, has the burden of proving such presence, his theory of liability necessarily fails.

AFFIRMED.

equipment in proper and safe operating condition.
> [Otis] will regularly and systematically examine, adjust, lubricate as required, and if conditions warrant, repair or replace:
> ....
> Hoistway door interlocks....

The contract further provided that Otis "shall not be liable for any loss, damage or delay due to any cause beyond [Otis'] reasonable control."

**3.** The record contains no *direct* evidence that either condition existed at the time of Otis' inspection. The *circumstantial* evidence on this point is in equipoise; that is, the inference that one or both of the conditions were present is no more permissible than the inference that neither was present. Thus, to decide the case in James' favor, the jury would have to "flip a coin." A fact that can only be decided by a coin toss has not been proven by a preponderance of the evidence, and cannot be submitted to the jury.