921 F.2d 1224
 James T. WYATT, Sr., Patricia Wyatt, Plaintiffs-Appellees,
v.
OTIS ELEVATOR COMPANY, Defendant-Appellant,
Mark Rubin, Robert Balogh, etc., Defendants.
James T. WYATT, Sr., Patricia Wyatt, Plaintiffs-Appellees,
v.
OTIS ELEVATOR COMPANY, Defendant-Appellee,
Mark Rubin, Robert Balogh, a Florida General Partnership,
Defendants-Appellants.
 Nos. 89-7590, 89-7621.
 United States Court of Appeals,
Eleventh Circuit.
 Jan. 22, 1991.
 
 Benjamen T. Rowe, R. Boyd Miller, Cabaniss, Johnston, Gardner, Dumas & O'Neal, Mobile, Ala., for defendant-appellant in No. 89-7590.
 Joseph M. Brown, Jr., Mobile, Ala., Andrew T. Citrin, Joseph M. Brown, Cunningham, Bounds, Yance, Crowder & Brown, Mobile, Ala., for plaintiffs-appellees in No. 89-7590.
 Mary Beth Mantiply, Julia L. Christie, Mobile, Ala., for defendants-appellants in No. 89-7621.
 Joseph M. Brown, Jr., Andrew Citrin, David L. Kane, Benjamen T. Rowe, Cabaniss, Johnston, Gardner, Dumas & O'Neal, Mobile, Ala., for plaintiffs-appellees in No. 89-7621.
 Appeals from the United States District Court for the Southern District of Alabama.
 Before ANDERSON and EDMONDSON, Circuit Judges, and GODBOLD, Senior Circuit Judge.
 GODBOLD, Senior Circuit Judge:
 
 
 1
 James T. Wyatt, Sr., a plaintiff in this removed personal injury action, was discovered dazed and bleeding near the doors of a passenger elevator on an upper floor of an office building in Mobile, Alabama. According to his undisputed testimony, as he was exiting the elevator and was within the door opening, the closing door struck him in the back and injured him. He and his wife sued Rubin and Balogh, the partnership owners of the building, and Otis Elevator Company, Inc., which had recently completed a construction contract with the owners to upgrade the elevators and was under a contract with the owners to maintain the elevators.
 
 
 2
 The jury returned a verdict for Wyatt and for his wife and a verdict in favor of Rubin and Balogh. The court denied the cross-claim of Rubin and Balogh against Otis for indemnity for their costs and attorney fees. Otis appeals from the judgment against it, and Rubin and Balogh appeal from the denial of their motion, based on indemnity, to tax against Otis as costs their attorney fees and other costs.I. The Otis appeal
 
 
 3
 The major dispute between plaintiffs and Otis concerns asserted failure of a retraction, or reopening, system for the door of elevator two. Though we speak of door in the singular, entry to and exit from the elevator car involves the operation of two doors, a car door, which is part of and moves with the elevator car, and a hoistway or hall door, which is not part of the car but opens and closes across the entrance to the elevator hoistway. When the car reaches a landing the two doors interlock by a cam, and the two doors open and close together as a unit. If the door, after being opened, is closing and something enters the plane along which the closing door will move, the retraction system should cause the door to instantaneously stop its forward progress and retract to a fully open position.
 
 
 4
 The contract for upgrading the elevators describes the retraction system:
 
 OTIS ELECTRONIC DETECTOR
 
 5
 In lieu of a safety shoe we shall furnish the Otis Electronic Detector, a proximity-type door reversal device.
 
 
 6
 The doors shall be prevented from closing from their full open position if a person comes within the zone of detection. The detection zone shall move with the doors and if a person or object enters the zone as the doors are closing, the doors shall reverse and reopen. The doors shall reclose after a minimal time interval. A passenger entering or leaving the cars shall not cause the doors to stop and reverse unless the doors reach a predetermined proximity to the passenger.
 
 
 7
 After a stop is made, the doors shall remain open for a time interval to permit passenger transfer, after which the doors shall close automatically. This interval shall be less for a car call stop than for a hall call stop or a coincident car/hall call stop.
 
 
 8
 If the doors are prevented from closing for approximately twenty seconds, the detector device shall be rendered inoperative and the doors shall close at reduced speed. While the doors are closing, a loud buzzer located on the car shall sound.
 
 
 9
 Two separate and independent devices trigger the retraction system, a sensor and an electric eye, both mounted on the car door.
 
 
 10
 Otis moved for a directed verdict and for judgment n/o/v. The motions were denied. There were no eyewitnesses to Wyatt's being struck, but there is no evidence that he was injured by some instrumentality other than the closing door, which could strike him only if he was in the plane of its movement. There was evidence that the retraction devices were examined shortly after Wyatt's injury and were found to be functioning properly. The jury was entitled to accept his testimony describing his mishap.
 
 
 11
 There was sufficient evidence from which the jury could infer that the accident occurred by reason of malfunctioning of the door. Otis's elevator maintenance examiner in Mobile, L.C. Hadder, was in charge of elevator maintenance at the building. He testified concerning operation of the elevator door, maintenance on the elevator, inspection of the elevator following the accident, and standards required for passenger elevators. In response to a hypothetical question he testified that if the door struck Wyatt while he was in the zone of detection it would not have been operating properly. There is no substantial evidence that Wyatt was outside the horizontal bounds of the zone covered by the two detection devices that would trigger the retraction system. Otis suggests that Wyatt may have "come in contact" with only the hoistway door, which had no triggering device attached to it since both the sensor and the electric eye were mounted on the car door. It is undisputed that the two doors operate together and as a unit and within the zone of detection. There is no evidence that the doors failed to operate together as a unit. It is, therefore, of no consequence whether the car door portion of the unitary operation, or the hoistway door portion, came in contact with Wyatt or that the hoistway door did not have a triggering device mounted on it.
 
 
 12
 The zone of detection, measured from the leading edge of the car door to the jamb, phases out or desensitizes when the closing door reaches four to six inches from the jamb, because otherwise the sensing devices would "see" or sense the presence of the jamb itself and activate a retraction. No evidence suggests that Wyatt's body was solely within this four to six inch desensitized zone of the doorway, or that this was even possible.
 
 
 13
 Otis is not an insurer of the condition and functioning of the elevator. Having discussed cause in fact and evidence that Wyatt's injury arose from a malfunctioning door, we must, therefore, turn to the evidence of whether Otis was guilty of negligence or wanton conduct relating to the malfunctioning door and arising out of its duty to maintain and repair the elevator.
 
 
 14
 Under the maintenance contract, made in 1980, Otis agreed to use trained and qualified personnel who would "use all reasonable care to maintain the elevator equipment in proper and safe operating condition." Otis agreed to "examine, adjust, lubricate as required, and if conditions warrant, repair or replace" a lengthy schedule of components, including components that relate to door closing. It agreed also to examine periodically "all safety devices." Otis makes no contention that the maintenance contract did not extend to the door retractor system. The construction contract provided that the maintenance contract continued in effect.
 
 
 15
 Alabama treats a passenger elevator as a common carrier and requires that one maintaining a passenger elevator must exercise the highest degree of care. Container Corp. of America v. Crosby, 535 So.2d 154, 156 (Ala.1988), and cases cited. A company under contract to maintain an elevator in good repair may be liable to persons injured by a condition in the elevator that needs repair when the company has notice or knowledge that should have alerted it to the need for repair. Jones v. Otis Elevator Co., 861 F.2d 655 (11th Cir.1988). On the issue of notice or knowledge, the court may permit evidence of prior incidents, so long as the conditions of the prior incidents are substantially similar to the occurrence in question and are not too remote in time. Id. The trial court in the present case permitted evidence of incidents involving persons who, in each instance, were struck by the closing door of the same elevator in circumstances under which the door should have reversed its movement, and retracted. According to the testimony of Hadder, such an incident could not have occurred unless the retraction system was malfunctioning. The evidence met the requirement of similarity. In each instance a person traversed the doorway opening, the door should have reversed and retracted, it failed and struck or pinned the person who was within the doorway. This does not happen with a properly operating system. In no incident was there evidence that the impact on the person came from some source other than the closing door. Remoteness in time is a matter in the discretion of the trial judge. Jones, supra. He did not abuse his discretion. The judge limited consideration of other incidents to those that the jury could infer were made known to Otis.
 
 
 16
 It is not necessary that we review all the testimony of prior incidents. One mishap involved a small child who was caught by the closing door and suffered an injured hand. This was reported to Otis, and its representative came to the scene. Another incident involved the General Services Administration manager for government offices in the building who had received numerous complaints about the elevators (not limited to operation of the doors). She decided to check the elevators herself, including the operation of doors, and, in the process, she stepped into the doorway of elevator two to see if the closing door would retract. It did not retract but continued to close and knocked her against the door frame. Someone else pulled the door back and enabled her to get out.
 
 
 17
 Early in the morning of November 17, the date of the accident, Otis's representative was called to the building and found elevator two stuck on an upper floor with the doors open. He found that the car call relay (not part of the retraction system) was stuck. He cleaned it, rode the elevator, found it operating properly, and "did not notice" the doors slamming shut. That afternoon, after the accident to Wyatt, he was called again. He checked door operation, door speed, door thrust, and found all operating within code standards. He checked the two retraction detection devices and found them to be operating "properly."
 
 
 18
 Otis relies upon James v. Otis Elevator Company, 854 F.2d 429 (11th Cir.1988). In that case the elevator, open front and back, traveled in a shaft, the opening to which on each floor was covered by a single vertically-opening door. A safety device, called an "interlock," prevented the door being raised on any floor unless the elevator was present at that floor. Once the elevator was present, and the door raised, a circuit breaker was activated, which prevented the elevator from moving. Plaintiff summoned the elevator by the call button, and when it arrived he released the button and raised the hoistway door far enough, he thought, to trigger the interlock and prevent the elevator's moving. He then went a distance away and, walking backwards, approached the elevator pulling a cart with one hand. As he reached the doorway he reached around with his other hand and fully opened the hoistway door, while moving the cart with the pulling hand. Without looking, he stepped backwards through the doorway. The elevator had moved to another floor, and he fell down the shaft.
 
 
 19
 Otis was under a maintenance contract that is the same or substantially similar to the one in the present case. In James an expert inspected the elevator a year and a half after the incident, but he could learn nothing because in the interim Otis had overhauled the elevator, including the interlock. He hypothesized that either the interlock's electrical system could have shorted out, or foreign matter could have caused the circuit breaker to stick in a closed position, thus permitting the elevator to move after plaintiff raised the hoistway door. The district court granted summary judgment for Otis, finding there was no evidence of negligence by it. On appeal plaintiff contended that the conditions described by the expert were present during the last inspection performed by Otis prior to the accident and should have been discovered, but no evidence supported these contentions. There were no prior incidents or complaints relating to the interlock for the hoistway door that would constitute notice or knowledge to Otis of malfunctioning or a need to repair. Thus, the critical evidence of notice or knowledge that is present in this case was not present in James.
 
 
 20
 Wyatt sought to, and at times succeeded in, introducing evidence of incidents and complaints about the elevators that did not relate to failure of the doors to retract. However, several times during testimony and again in final instructions to the jury, the trial court instructed that complaints and incidents that did not relate to elevator doors should not be considered for any purpose, and that complaints concerning doors should be considered only as evidence that Otis and Rubin and Balogh knew or should have known that doors were defective. Considering the oft-repeated limiting and cautionary instructions to the jury, we cannot say that there was reversible error.
 
 
 21
 The court permitted testimony by deposition from Kerry McGuinn, an experienced elevator inspector employed by the General Services Administration. He examined elevator two approximately three months after Wyatt was injured. He testified, over objection by Otis, that he recommended that the doors should be equipped with soft or resilient, non-metallic, edges that would protect someone against whom they might close, and that (for reasons not stated) the electric eyes be installed at different heights than where located. Also he recommended that "metal side guards" be put on the hoistway doors, though it is not even clear what these are. And he recommended new and lighter car doors. Finally, he stated that the conversion done pursuant to the construction contract "did not provide the safety of a normal-type conversion."The deposition was read under confusing circumstances. Counsel for Otis did not want to make repeated objections in the presence of the jury to questions as read, and it is unclear exactly what Otis objected to and when and why. But even if we give Otis the benefit of properly raising relevance and prejudice, we do not find reversible error. It contends that the matters described by McGuinn concerned manufacture and design, for which Otis had no responsibility and was not sued, nor was Otis sued for negligence in performance of the construction contract. Under the maintenance contract Otis had a general duty to "use all reasonable care to maintain the elevator equipment in proper and safe operating condition." The next stated duty was to "regularly and systematically examine (etc.) ... and if conditions warrant, repair or replace," followed by a list of several dozen items. Some of these relate to doors: car door contact, door protective device, car safety mechanism, and several others. Otis also was required to examine periodically "all safety devices." On the other hand, Otis was specifically not required to "install new attachments on the elevators whether or not recommended or directed by insurance companies or by governmental authorities, or to make any replacements with parts of a different design."
 
 
 22
 The meaning of the foregoing terms, and others and their interplay, was not developed at trial. It might well have been an issue for the court, or the jury on proper instructions, to determine whether under the maintenance contract Otis was obligated, for example, to put a soft or rubber edge on a door if evidence supported a conclusion that the metal edge was unsafe and the elevator therefore was not in a "proper and safe operating condition." But no rulings were sought; rather arguments are simply addressed to us in conclusory terms as to whether the subject matter of McGuinn's testimony was or was not directed at matters within Otis's responsibility. We cannot say without construction of the maintenance contract, which was not sought or attempted, that the McGuinn testimony was irrelevant.
 
 II. Cross-appeal by Rubin and Balogh
 
 23
 We vacate and remand for the district court to reconsider the issue of indemnity to Rubin and Balogh for attorney fees and costs in the light of, inter alia, George E. Jensen Contractor, Inc. v. Quality Mill Works, Inc., 431 So.2d 1232 (Ala.1983), and, if appropriate, for consideration of Otis's contention that it is relieved of liability to indemnify for attorney fees and costs by the provision of the maintenance contract that Otis should not be liable for consequential damages.
 
 
 24
 On the appeal by Otis, the judgment is AFFIRMED. On the cross-appeal by Rubin and Balogh, the order denying the taxation against Otis of attorney fees and costs of Rubin and Balogh is VACATED and REMANDED for further proceedings.