42 P.3d 621

Krystal LOWREY and William Lowrey, her husband, Plaintiffs–Appellants,

v.

MONTGOMERY KONE, INC., a Delaware corporation, Defendant–Appellee.

No. 1 CA–CV 00–0299.

Court of Appeals of Arizona, Division 1, Department D.

March 26, 2002.

## OPINION

FIDEL, Judge.

¶ 1 Plaintiff Krystal Lowrey and her husband appeal from summary judgment in Lowrey's suit to recover damages from an elevator maintenance company for injuries that she sustained in an elevator that descended rapidly and abruptly stopped. Concluding that the trial court erred in precluding Lowrey from relying upon *res ipsa loquitur* to advance her case, we reverse the summary judgment entered against her. We uphold, however, the trial court's ruling that defendant Montgomery Kone, Inc., an elevator maintenance company, is not susceptible under the common carrier doctrine to a higher-than-ordinary standard of care. In the course of our decision, we join with other courts that have reexamined and abandoned the notion of a common carrier's higher duty of care in favor of the standard of reasonable care under the circumstances.

### I.   BACKGROUND[1]

¶ 2 Lowrey, an American Express employee, entered an elevator in the American Express Building to go from the first to the fourth floor. The elevator stopped on the third floor, a passenger stepped out, and the elevator lifted on its way. Soon the fourth floor indicator lit up and the elevator stopped, but the doors did not open. The elevator then shook for two to three seconds, the lights went out, and the elevator dropped. At the second floor, it stopped abruptly and the doors opened. Lowrey suffered a back injury that eventually required surgery.

¶ 3 Lowrey and her husband brought this lawsuit against Montgomery Kone, Inc., among others.[2] But after ruling, upon successive motions for summary judgment, that neither the common carrier doctrine nor *res ipsa loquitur* applied, the trial court dismissed Lowrey's suit with prejudice.

Law Office of Richard T. Weissman By Richard T. Weissman, Phoenix, Attorney for Plaintiffs–Appellants.

Renaud, Cook & Drury, P.A. By William W. Drury, Jr., Charles A. Struble, Phoenix, Attorneys for Defendant–Appellee.

1. As always in an appeal from summary judgment, we state the facts in a light most favorable to the non-moving party.

2. Lowrey sued the elevator manufacturer, but that claim was dismissed. She also sued the building manager, Cushman & Wakefield of Arizona, Inc., and the trial court granted summary judgment for Cushman & Wakefield as for Montgomery Kone. Although Cushman & Wakefield was originally a party to this appeal, Lowrey has now settled her claims against that defendant. Thus, we consider her case against Montgomery Kone alone.

¶ 4 In reviewing an order granting summary judgment, we must determine whether a genuine issue of disputed material fact exists and, if not, whether the trial court correctly applied the substantive law. *In re Estate of Johnson,* 168 Ariz. 108, 109, 811 P.2d 360, 361 (App.1991).

## II. RES IPSA LOQUITUR

¶ 5 Defendant's expert offered the opinion that the elevator incident was caused by a power failure, not by negligence. Although Lowrey's expert did not offer a counter-explanation of the fall,[3] he did state the opinion that, even in the event of a power failure, a hydraulic elevator should come to a stop in a manner that is not substantially different from a normal stop, and that "an elevator does not function as the elevator in this case did without negligence." Upon this evidence, we consider whether the trial court erred by precluding Lowrey from relying on *res ipsa loquitur* to advance her claim.

¶ 6 *Res ipsa loquitur* (meaning the thing speaks for itself) is "a rule of circumstantial inference of responsibility for an injury." *McDonald v. Smitty's Super Valu, Inc.,* 157 Ariz. 316, 318, 757 P.2d 120, 122 (App.1988). A plaintiff who establishes the elements of *res ipsa loquitur* can avoid summary judgment and reach the jury without direct proof of negligence. *Cox v. May Dep't Store Co.,* 183 Ariz. 361, 364, 903 P.2d 1119, 1122 (App.1995). Whether *res ipsa loquitur* applies is preliminarily a question of law for the court. *Ward v. Mount Calvary Lutheran Church,* 178 Ariz. 350, 354, 873 P.2d 688, 692 (App.1994).

¶ 7 At present, Arizona law holds three elements to be necessary to the application of *res ipsa loquitur*:[4] (1) the accident must be of a kind that ordinarily does not occur in the absence of negligence; (2) the accident must be caused by an agency or instrumentality subject to the control of the defendant;[5] (3) the plaintiff must not be in a position to show the particular circumstances that caused the offending agency or instrumentality to operate to her injury.[6] *McDonald,* 157 Ariz. at 319, 757 P.2d at 123. Only the first and third elements are at issue in this case.

### A. The Likelihood of Negligence

¶ 8 Montgomery Kone first argues that Lowrey cannot invoke *res ipsa loquitur* because there is a viable, albeit disputed, explanation of the accident that attributes it to a non-negligent cause. We must accept as given, for the purpose of summary judgment,

3. Lowrey argues that the evidence is inconsistent with the thesis that a power failure occurred, pointing out that a power failure would not explain the shaking of the elevator before the lights went out, and that the elevator in question and others in the building had stalled and dropped on past occasions without explanation or evidence of power failures.

4. The American Law Institute is undertaking to reformulate the elements of *res ipsa loquitur* in a draft in progress. *See* Restatement (Third) of Torts: Liability for Physical Harm (Basic Principles) (Tentative Draft No. 1, 2001). In that draft, the black letter law of *res ipsa loquitur* is set forth as follows: "It may be inferred that the defendant has been negligent when the accident causing the plaintiff's physical harm is a type of accident that ordinarily happens because of the negligence of the class of actors of which the defendant is the relevant member." *Id.* § 17. We will follow with interest the evolution of this formulation, but it suffices for present purposes to examine the doctrine as traditionally defined.

5. Although the element of control is frequently stated in terms of "exclusive control by the defendant," we explained in *McDonald* that the element of control, "if it is not to be pernicious and misleading, must be a very flexible term. It may be enough that the defendant has the right or power of control, and the opportunity to exercise it, as in the case of an owner who is present while another is driving the owner's car, or a landowner who permits visitors to come on his premises. It is enough that the defendant is under a duty which he cannot delegate to another, as in the case of a surgeon who allows a nurse to count the sponges. It is enough that the defendant shares the duty and the responsibility, as in the case of the landlord of a building from which an electric sign falls into the street." 157 Ariz. at 320, 757 P.2d at 124 (quoting Prosser and Keeton, *Law of Torts* § 39, at 250 (5th ed.1984)).

6. A fourth element—that the accident must not have been due to any negligent or voluntary action on the part of the plaintiff—was once included among the conditions necessary to establish *res ipsa loquitur*, but has been eliminated with the advent of comparative fault. *Cox,* 183 Ariz. at 365–66, 903 P.2d at 1123–24.

that Lowrey's injuries were caused by the elevator's abrupt stop. But because Montgomery Kone's expert offered the opinion that the incident was caused by a power failure and did not result from any negligence, the availability of a viable non-negligent explanation, according to Montgomery Kone, precludes the application of the doctrine.

¶ 9 We disagree. First, the law does not require a plaintiff to rule out every conceivable explanation for an accident other than negligence before resorting to *res ipsa loquitur.* *McDonald,* 157 Ariz. at 319, 757 P.2d at 123. Indeed, before applying the doctrine, a fact-finder may need to assess the relative likelihood of explanations other than negligence. "The first requirement [to establish *res ipsa loquitur*] involves nothing more than a weighing of the probabilities as to the cause of certain events; if the probabilities weigh heavily in favor of the event having been negligently caused, then *res ipsa* applies." *Tucson Gas & Elec. Co. v. Larsen,* 19 Ariz.App. 266, 267, 506 P.2d 657, 658 (1973).

¶ 10 Second, a jury may require expert assistance in resolving the threshold question whether an accident was of a kind not likely to occur in the absence of negligence. Common knowledge may often suffice, as illustrated by the case that elicited the memorable observation, "We can imagine no reason why, with ordinary care, human toes could not be left out of chewing tobacco, and if toes are found in chewing tobacco, it seems to us that somebody has been very careless." *Pillars v. R.J. Reynolds Tobacco Co.,* 117 Miss. 490, 500, 78 So. 365, 366 (1918). But when no fund of common knowledge would enable a layperson to reasonably draw such a conclusion, the plaintiff may present "expert testimony that such an event usually does not occur without negligence." *Ward,* 178 Ariz. at 355, 873 P.2d at 693 (quoting Restatement (Second) of Torts § 328D cmt. d (1965)); *see also* Prosser and Keeton, Law of Torts § 39, at 247 (5th ed.1984). Thus, in *Cox,* where a plaintiff wearing an ordinary jacket was injured when her jacket was caught under an escalator's moving handrail, the plaintiff established the first element of

*res ipsa loquitur* by presenting a mechanical engineer's opinion that such an accident could not have occurred unless the escalator had been improperly designed or maintained. 183 Ariz. at 364, 903 P.2d at 1122.

¶ 11 Third, just as, when the fact-finder cannot draw upon common knowledge to resolve the point, a plaintiff may present expert testimony that the event would not likely have occurred in the absence of negligence, so may a defendant present the conflicting expert opinion that there is a likely non-negligent explanation for the event. Such a conflict was presented in this case. Further, "[t]he existence of conflicting expert testimony in itself does not render the doctrine inapplicable." *Washington Metro. Area Transit Auth. v. L'Enfant Plaza Properties, Inc.,* 448 A.2d 864, 868 (D.C.1982). Rather, when, as here, qualified experts disagree whether an accident is of a type that ordinarily results from negligence, their disagreement presents a threshold issue that the fact-finder must resolve in order to decide whether the doctrine may be applied. *See id.; see also Jones v. Porretta,* 428 Mich. 132, 405 N.W.2d 863, 874 (1987) ("[I]f there is such evidence, even if it is disputed, ... the jury is to determine whether plaintiff has proven whether it is more likely than not that defendant's negligence caused plaintiff's injury. The court may grant a motion for a directed verdict only if it is determined that reasonable minds could not differ that this result could ordinarily happen without negligence.").

¶ 12 Montgomery Kone attempts to draw the opposite conclusion from *Nieman v. Jacobs,* 87 Ariz. 44, 347 P.2d 702 (1959), and *Faris v. Doctors Hospital, Inc.,* 18 Ariz.App. 264, 501 P.2d 440 (1972), but neither case is apposite. In *Faris,* a medical malpractice action, the plaintiff, in the aftermath of abdominal surgery, experienced neck pain and was discovered to be suffering from a herniated cervical disk. The plaintiff attempted, but was not permitted, to rely upon *res ipsa loquitur* to establish that her disk injury was the likely consequence of negligence on the part of her surgeons or her anesthesiologist. But the plaintiff offered no expert opinion to

establish that her herniated disk would not likely have arisen in the absence of such negligence. The defendants' experts, on the other hand, testified that plaintiff's disk condition was not necessarily related to trauma and, in light of her age-related degenerative disk disease, could have been triggered by "coughing, sneezing, or merely awakening in the morning." *Id.* at 266, 501 P.2d at 442. Therefore, although *Faris* denied the plaintiff access to *res ipsa loquitur*, it does not stand for the proposition that conflicting expert testimony defeats the applicability of that doctrine. It is simply a case in which the plaintiff offered *no* expert testimony to overcome the opinion of defendants' experts that her condition could be attributed to causes other than their negligence.

¶ 13 In *Nieman*, a hotel elevator stopped about two feet below the lobby, and the operator could not raise it into place. The plaintiff was not injured by the movement of the elevator, however, but struck her head on the door frame while trying to climb out. 87 Ariz. at 46, 347 P.2d at 703. Her means of injury gave rise to a question whether the plaintiff's injury was caused by her own conduct. And at the time of *Nieman*, a plaintiff who sought to invoke *res ipsa* was obliged to establish that the accident was not due to any negligence on her part—a requirement now abandoned since the advent of comparative fault. *See supra* n. 6. Because the plaintiff could not establish that her injury was more likely attributable to the negligent operation or maintenance of the elevator than to her own fault, she was denied recourse to *res ipsa loquitur*. The *Nieman* court expressly distinguished falling elevator cases, however, stating that in such cases, "the question of causation generally is eliminated, ... the sole consideration relates to proof of negligence," and, accordingly, courts "recognize the peculiar availability of the res ipsa loquitur rule." 87 Ariz. at 49, 347 P.2d at 705–06.

¶ 14 Montgomery Kone attempts, nonetheless, to profit from the *Nieman* court's observation that "if ... there are two concurring causes of the accident ... and there is no evidence it was any more likely that the injury was caused by the negligence of defendant than by that of the stranger, the rule (of res ipsa loquitur) does not apply." 87 Ariz. at 48, 347 P.2d at 705 (quoting *Phen v. All American Bus Lines, Inc.*, 56 Ariz. 567, 110 P.2d 227 (1941)). But this is not a case with *no evidence* that the injury was likely caused by the negligence of the defendant. Rather, it is one in which the parties offered *conflicting* expert testimony on the question. Which expert was correct was a matter for the jury to resolve.

¶ 15 In summary, it was permissible in this case for expert witnesses to address the question whether the accident was of a type ordinarily attributable to negligence. *See Smith v. Munger*, 532 P.2d 1202, 1205 (Okla. App.1974) (knowledge of the mechanical workings of elevators and what might cause them to malfunction is outside the common knowledge of a layperson). And, we reiterate, when qualified expert witnesses conflict over the question whether an accident would likely have occurred in the absence of negligence, the conflict does not preclude the application of *res ipsa loquitur*. Rather, the fact-finder must resolve the conflict in order to determine whether the doctrine shall apply. Here, Montgomery Kone offered the expert opinion that the elevator incident was attributable to a power failure and not to negligence. But Lowrey's expert offered the opinion that, even in the event of a power failure, an elevator would not have functioned as this one did in the absence of negligence. Lowrey's expert's testimony, if believed by the jury, would have established the first element of *res ipsa loquitur*, for it would have "allow[ed] the jury to infer that negligence was more likely than not the cause of the accident." *Cox*, 183 Ariz. at 364, 903 P.2d at 1122.

**B. Inability to Show the Particular Circumstances that Caused the Elevator to Fall**

¶ 16 We have concluded that Lowrey sufficiently established the first element of *res ipsa loquitur* to escape summary judgment on that ground, and, as we have indicated, Montgomery Kone does not challenge the second element; because it maintained the elevator, the elevator was subject to its

control. We turn then to the question whether summary judgment may be affirmed on the ground that Lowrey failed to establish the third element—an inability to show the particular circumstances that caused the elevator to fall. Montgomery Kone argues that Lowrey cannot meet this requirement because her elevator expert never examined the elevator.

¶ 17 In *McDonald*, we stated, "Invocation of *res ipsa loquitur* is no substitute for reasonable investigation and discovery. The doctrine may benefit a plaintiff unable directly to prove negligence; it does not relieve a plaintiff too uninquisitive to undertake available proof." 157 Ariz. at 321, 757 P.2d at 125. We cannot determine from the present record, however, whether an examination of the elevator was material to the formation of Lowrey's expert's opinion. Nor does this element appear to have been significant to the trial court's decision; indeed, we cannot find in the record that this argument was raised before the trial court. Further, as we also indicated in *McDonald*, a defendant cannot attack a plaintiff's failure to examine the instrumentality of injury unless it has preserved the instrumentality after the injury in such condition that an examination would likely be productive. *See id.* Had Lowrey's expert inspected the elevator, the inspection would not have occurred until months after the accident, and there is no evidence that such an examination would likely have revealed the condition of the elevator at the relevant time.

¶ 18 In summary, we conclude that the trial court erred in precluding Lowrey from relying upon *res ipsa loquitur* to advance her case. The summary judgment against her must accordingly be reversed.

### III. COMMON CARRIER DOCTRINE

■ ¶ 19 The case will therefore be remanded, but a question remains: whether the trial court properly determined by partial summary judgment that Montgomery Kone should *not* be subjected under the common carrier doctrine to a higher-than-ordinary standard of care. Common carriers were traditionally said to have a duty to exercise the "utmost" or "the highest degree of care" in the maintenance and operation of their vehicles and equipment. *See Bethel v. New York City Transit Auth.*, 92 N.Y.2d 348, 681 N.Y.S.2d 201, 703 N.E.2d 1214, 1215 (1998). This doctrine dates back to "the age of steam railroads," whose "primitive safety features resulted in a phenomenal growth in railroad accident injuries." *Id.* at 1216. Rationales for the doctrine were (1) "the perceived ultrahazardous nature of the instrumentalities of public rapid transit," and (2) passengers' "total dependency upon [carriers] for safety precautions." *Id.* at 1217.

¶ 20 Although passenger elevators have long been classified among the group of common carriers,[7] some courts have distinguished elevator owners and operators from elevator maintenance contractors and have declined to apply the common carrier doctrine to the latter.[8] We need not dwell on the validity of this distinction, however, for we resolve this issue on a more fundamental ground. We uphold the trial court's refusal to apply the common carrier doctrine because we conclude that it adds no useful element to the ordinary negligence standard of reasonable care under the circumstances.

¶ 21 The New York Court of Appeals concluded in *Bethel*, after a thorough examination of the origins of the common carrier doctrine, that it retains no current via-

---

7. *First Nat'l Bank of Ariz. v. Otis Elevator Co.*, 2 Ariz.App. 80, 87, 406 P.2d 430, 437 (1965); *Wyatt v. Otis Elevator Co.*, 921 F.2d 1224 (11th Cir.1991); *White v. Sears, Roebuck & Co.*, 242 F.2d 821 (4th Cir.1957); *Treadwell v. Whittier*, 80 Cal. 574, 22 P. 266 (1889); *Cash v. Otis Elevator Co.*, 210 Mont. 319, 684 P.2d 1041 (1984); *Jardine v. Rubloff*, 73 Ill.2d 31, 21 Ill.Dec. 868, 382 N.E.2d 232 (1978); *Johnson v. Hopkins*, 213 Ala. 492, 105 So. 663 (1925).

8. Some courts that have applied the common carrier doctrine to elevator maintenance companies are *Norman v. Thomas Emery's Sons, Inc.*, 7 Ohio App.2d 41, 218 N.E.2d 480, 482 (1966), and *Wyatt v. Otis Elevator Co.*, 921 F.2d 1224 (11th Cir.1991) (applying Alabama law). Some courts that have rejected the application of the doctrine to elevator maintenance companies are *Pruneda v. Otis Elevator Co.*, 65 Wash.App. 481, 828 P.2d 642, 646 (1992), and *Davlan v. Otis Elevator Co.*, 816 F.2d 287 (7th Cir.1987) (applying Illinois law).

bility. One underpinning from the steam railroad era—the perception that the instrumentalities of public transport were ultrahazardous—has been superseded, the court concluded, by more than a century of technological improvements and governmental regulation. 681 N.Y.S.2d 201, 703 N.E.2d at 1216. Moreover, the dangers in any given mode of transport are wholly accommodated, and the passenger's dependence on the carrier for safety is likewise wholly accommodated, by the standard of reasonable care under the circumstances:

> "The objective, reasonable person standard in basic traditional negligence theory ... necessarily takes into account the circumstances with which the actor was actually confronted ..., including the reasonably perceivable risk and gravity of harm to others and any special relationship of dependency between the victim and the actor. 'The [reasonable person] standard provides sufficient flexibility, and leeway, to permit due allowance to be made ... for all of the particular circumstances of the case which may reasonably affect the conduct required.' "

*Id.* (quoting Restatement (Second) of Torts § 283 cmt. c).

¶ 22 The District of Columbia Court of Appeals likewise recognized that the flexible standard of reasonable care under the circumstances accommodates whatever levels of care a particular set of dangers may require. *Sebastian v. District of Columbia*, 636 A.2d 958, 962 (D.C.1994). Indeed, that court noted, even when cases "speak[ ] of the high degree of care required of a common carrier," such cases nonetheless subject common carriers "to essentially the same standard as any other alleged tortfeasor, i.e., an obligation to exercise due care." *Id.;*[9] *see also McReynolds v. First Office Mgmt.*, 948 S.W.2d 342, 345 (Tex.Ct.App.1997) (rejecting notion that elevator owner/operator has duty

to use anything greater than reasonable care to make the premises safe for use).

¶ 23 We find the reasoning of these cases persuasive. We also note that an attempt to explain the common carrier doctrine to a jury would be riddled with the prospect of confusion. A common carrier, like any other actor, must take reasonable care under the circumstances of the particular case. Just as the class of common carriers contains such disparate members as airplanes, taxis, horse-drawn carriages, and elevators, similarly the circumstances associated with each type of carrier entail disparate elements of reasonable care. To hold that a carrier must exert *more than reasonable* care under the circumstances not only serves no useful purpose; it is a hard concept to make sense of and one very likely to be misunderstood. We believe that the time has come to discard the notion that a common carrier bears a higher duty toward its passengers than that of reasonable care under all of the circumstances. As the *Bethel* court observed, "there is no stratification of degrees of care as a matter of law.... Rather, 'there are only different amounts of care, as a matter of fact.' " 681 N.Y.S.2d 201, 703 N.E.2d at 1215 (quoting Prosser and Keeton, Law of Torts § 34, at 210–11 (5th ed 1984)).

## IV. CONCLUSION

¶ 24 For the foregoing reasons, we hold that the trial court erred in precluding Lowrey from relying upon the doctrine of *res ipsa loquitur* to advance her case against Montgomery Kone, but we uphold the trial court's determination that Montgomery Kone is not susceptible under the common carrier doctrine to a higher-than-ordinary standard of care. We remand for further proceedings consistent with this opinion.

CONCURRING: WILLIAM F. GARBARINO, Judge, and MARGARET H.

---

**9.** This point is illustrated by this court's 1965 opinion in *First National Bank of Arizona v. Otis Elevator Co.*, 2 Ariz.App. 80, 406 P.2d 430 (1965). Although the court found no error in a jury instruction that a building owner owed the plaintiff "a high degree of care" in the operation of its elevators, *id.* at 87, 406 P.2d at 437, the court nonetheless found it necessary to determine whether the circumstances of the elevator accident permitted an inference of *negligence* to be drawn. *Id.* at 84, 406 P.2d at 434. *See also* Jefferson L. Lankford & Douglas A. Blaze, The Law of Negligence in Arizona § 8.3(3), at 171–72 (2nd ed.1997).

DOWNIE, Judge Pro Tempore.*

---

\* The Honorable Margaret H. Downie, Judge *Pro Tempore* of the Court of Appeals, Division One, has been authorized to participate in this appeal by order of the Chief Justice of the Arizona Supreme Court pursuant to Ariz. Const. art. 6, § 31 and A.R.S. §§ 12–145 to –147 (1992).