NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

LAUREN GILBERT, *Plaintiff/Appellant,*

*v.*

CITY OF PHOENIX, et al., *Defendants/Appellees.*

SUSAN BONNELL, *Intervenor/Appellee.*

No. 1 CA-CV 22-0217
FILED 7-13-2023

Appeal from the Superior Court in Maricopa County
No. CV2016-007642
The Honorable Andrew J. Russell, Judge

**AFFIRMED**

COUNSEL

Law Office of Richard T. Treon, Gilbert
By Richard T. Treon
*Counsel for Plaintiff/Appellant*

Wieneke Law Group, PLC, Tempe
By Kathleen L. Wieneke, Tara Zoellner
*Counsel for Defendant/Appellee City of Phoenix*

Scottsdale City Attorney's Office, Scottsdale
By Lori S. Davis
*Counsel for Defendant/Appellee City of Scottsdale*

Kent Law, PLC, Tempe
By Jonathan J. Henry
*Counsel for Intervenor/Appellee*

---

**MEMORANDUM DECISION**

Judge Angela K. Paton delivered the decision of the Court, in which Presiding Judge Jennifer M. Perkins and Judge D. Steven Williams joined.

---

**P A T O N**, Judge:

¶1        Lauren Gilbert appeals from a superior court order granting the City of Phoenix's motion for summary judgment.  For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        We state the facts in a light most favorable to Gilbert, who appeals from summary judgment. *See Lowrey v. Montgomery Kone, Inc.*, 202 Ariz. 190, 191, ¶ 2 n.1 (App. 2002).  In August 2015, Gilbert's husband, Luke, called 911 and reported that Gilbert's father, Marc, was banging on the door to Gilbert and Luke's home and screaming that he was going to kill them. Luke reported that Marc was "deranged," "delusional," "need[ed] mental help," and was probably on drugs.  The 911 operator told Luke that police officers were on their way to the scene.  Luke reiterated that Marc was mentally unstable.

¶3        While on the phone with Luke, the 911 operator entered information about the incident into the computer-aided dispatch system ("CAD") to transmit to the responding officers.  She recorded the type of emergency with the numeric code for fight.

¶4        Gilbert called her mother, Marc's ex-wife Marci, to come over and assist with the situation.  Marci arrived before the officers did.  Marci calmed Marc down, convinced him to return to his home several miles away, and rode with him there in his car.  Phoenix police officers subsequently arrived at Gilbert's house, and spoke with Gilbert and Luke, who told them about Marc's mental health condition and their belief that Marc had gone off his medication.  Eventually the Phoenix police officers and a Scottsdale police officer went to Marc's Scottsdale home.  As they attempted to arrest Marc, they engaged in a struggle with him, and he stopped breathing.  Marc was later pronounced dead at the hospital.

2

¶5             Gilbert and her brother filed a wrongful death claim against the City of Phoenix ("the City") for Marc's death based on negligent use of force, and the City moved for summary judgment.  Gilbert made no factual allegation of wrongful conduct by the 911 operator in her original complaint, nor did she reference the 911 operator in her formal disclosure statements.  But during oral argument on the City's motion for summary judgment, Gilbert argued the 911 operator was negligent in failing to inform responding officers of Marc's mental condition, which resulted in an inappropriate police response and ultimately led to his death.

¶6             The superior court found that, despite Gilbert not arguing the 911 operator theory in her notice of claim, complaint, or disclosures, the City had adequate notice of the claim through Gilbert's police procedures expert report disclosure, which Gilbert included with her opposing party statement of facts filing.  The superior court granted summary judgment for the City except to the extent Gilbert's claim arose out of "the manner in which the 911 [operator] handled" the original 911 call.

¶7             The City petitioned the court for leave to file another motion for summary judgment to address Gilbert's 911 operator claim, arguing it had inadequate notice and opportunity to brief the new claim, which prejudiced it.  The superior court granted the City's motion for leave, and the City filed a new summary judgment motion.

¶8             Prior to filing her response, Gilbert asked the court to allow her to conduct further discovery relevant to her 911 operator theory pursuant to Arizona Civil Rule of Procedure 56(d), even though discovery had ended over a year earlier.  The superior court denied the motion.  Gilbert then filed her response to the City's motion for summary judgment.

¶9             After considering the motion, response, reply, and oral arguments, the superior court granted summary judgment for the City, noting that the evidence did not create a genuine issue of material fact as to wanton or willful misconduct by the 911 operator as required by Section 12-713.  The court also noted that regardless of whether the 911 operator breached her duty to provide information about Marc's mental illness to the responding officers, the officers had actual knowledge of Marc's mental illness before approaching him because Gilbert and Luke told them about it before the officers went to Marc's house and interacted with him.  Gilbert appeals the summary judgment, and we have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") Sections 12-2101(A)(1), and -120.21(A)(1).

## DISCUSSION

**¶10**        Gilbert contends the evidence shows the 911 operator breached a professional duty to ascertain Marc's status as mentally ill and ensure an appropriate police response.  She further argues the evidence shows that the operator should have foreseen that her alleged breach could create an unreasonable risk of harm and result in Marc's death.  She also asserts that any knowledge the responding officers learned about Marc's mental health other than from the 911 operator is legally irrelevant to her claim.  The City counters that there was no evidence showing the 911 operator's conduct was willful and wanton or that her conduct proximately caused Marc's death.

**¶11**        The superior court "shall grant summary judgment if the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law."  Ariz. R. Civ. P. 56(a).  A factual dispute does not exist over a claim when "the facts produced in support of [it] have so little probative value . . . that reasonable people could not agree with the conclusion advanced by the proponent of the claim . . . ."  *See Orme Sch. v. Reeves*, 166 Ariz. 301, 309 (1990).  When reviewing a grant for summary judgment, "[w]e determine de novo whether any genuine issues of material fact exist and whether the trial court erred in applying the law."  *Armenta v. City of Casa Grande*, 205 Ariz. 367, 369, ¶ 5 (App. 2003).

**¶12**        The City challenges the propriety of Gilbert's reliance in her brief on citations to expert declarations dated November 4 and 13, 2019, that were filed with earlier motions and not cited to or filed with the briefing for the summary judgment motion that is the subject of this appeal.  The City contends that because none of Gilbert's filings in opposition to the summary judgment motion referenced the November 4 and 13 declarations, those declarations were not before or considered by the superior court.

**¶13**        Courts have reached different conclusions as to whether trial or appellate courts "must perform an independent search of the record for facts not presented by a party opposing summary judgment."  *See Tilley v. Delci*, 220 Ariz. 233, 237 n.4 (App. 2009) (collecting cases).  Although we recognize that our supreme court and this Court have held that courts should not be required to "search[] the record to attempt to discover facts which establish or defeat the [summary judgment] motion, *Mast v. Standard Oil Co. of Cal.*, 140 Ariz. 1, 2 (1984), we opt to consider them here for two reasons.  First, Gilbert brought the November 4 and 13, 2019, declarations

4

to our attention so no independent search of the record was required, and second, the discovery of any issue of disputed fact in the record precludes a grant of summary judgment. *See Elson Dev. Co. v. Ariz. Sav. & Loan Ass'n*, 99 Ariz. 217, 220 (1965) (noting summary judgment is granted erroneously if an examination of the entire record finds any issue of disputed fact "which could, if true, affect the final judgment"); Ariz. R. Civ. P. 56(a) (requiring a showing of no genuine dispute as to any material fact for summary judgment). And the declarations are part of the record on appeal.

¶14 As relevant here, Section 12-713 immunizes 911 operators and the public entities who employ them from civil liability for deaths resulting from the good-faith discharge of duties "except in the cases of wanton or wilful misconduct." Arizona courts generally treat "willful or wanton misconduct" and "gross negligence" the same. *Williams v. Thude*, 188 Ariz. 257, 259 (1997). This Court has explained that a party is grossly negligent when she acts or fails to act when she knows or reasonably should know that the act or failure to act creates an unreasonable risk of harm to another and has a high probability of resulting in substantial harm. *See Luchanski v. Congrove*, 193 Ariz. 176, 180, ¶ 19 (App. 1998); *see also* Rev. Ariz. Jury Instr. ("RAJI") (Civil) Negligence 10 (7th ed. 2020) (suggesting a simplified formulation of the standard). The parties here agree that gross and not mere negligence is the standard for determining "wanton or wilful misconduct" under Section 12-713.

¶15 Gilbert contends that the superior court "failed to consider the only competent evidence concerning the duties and responsibilities of a 911 [operator]" as provided by her expert, including the expert's opinion of the operator's "professional obligation" to properly designate the nature of the call as a mental health call in the CAD. She provides three pages of her expert's opinions to support her claim that the superior court "ignored" how the operator's conduct breached a duty of care and caused Marc's death.

¶16 As to the possible breach of duty, the superior court expressly recognized that the operator may have breached her duty of care when the court found that her conduct "may have constituted negligence." *See Gipson v. Kasey*, 214 Ariz. 141, 143, ¶ 9 (2007) (including "breach of duty" as an element of negligence). But the court concluded that evidence suggesting the operator breached a duty of care does not inherently support an inference that the operator knew or should have known that her conduct created an unreasonable risk of harm or involved a high probability that substantial harm would result, both of which are essential elements of gross negligence. *See Luchanski*, 193 Ariz. at 180, ¶ 19.

**¶17**      Gilbert addresses those distinctive requirements for gross negligence, as separate from ordinary negligence, only once in her opening brief when she states that the 911 operator "necessarily would have had to realize her . . . [conduct] would create an unreasonable risk of bodily harm" but points to no evidence to put the fact of this "necessary realization" into dispute. Gilbert claims the 911 operator should have realized that risk involved a high probability of substantial harm "because police training teaches that mentally ill people must be approached in a peaceful, non-confrontational way." She specifically cites to portions of her police procedure expert's declaration in which he quotes a news article and a City publication, which briefly mention "Mental-Health-Crisis Reforms" "apparently directed primarily to training officers" who "picked up citizens" with court orders related to mental illness, "mental-health awareness training for 1,300 patrol officers," and police responsibility for "de-escalating residents who are a threat . . . ." But Gilbert does not explain, and we do not see, how her evidence suggests the 911 operator here knew or should have known that her conduct created an unreasonable risk of harm or involved a high probability of substantial harm. Gilbert's evidence relates only to police procedures generally.

**¶18**      As part of its ruling on the motion for summary judgment, the superior court found that, regardless of the dispatcher's actions, the responding police officers had actual notice of Marc's mental state before they confronted him because Luke and Gilbert told them Marc suffered from mental illness when they arrived on scene to their home. Gilbert challenges this finding on appeal as legally irrelevant to the 911 operator's breach of duty. Because we agree with the superior court that there was no genuine issue of material fact in dispute regarding whether the 911 operator's conduct amounted to "wanton or willful misconduct" required for gross negligence, we need not reach Gilbert's argument that the officers' prior knowledge of Marc's mental illness was legally irrelevant to the 911 operator's breach of duty.

## CONCLUSION

**¶19**      We affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AA